1    Barbara J. Parker (SBN 69722)
     City Attorney
2    Otis McGee, Jr. (SBN 71885)
     Chief Assistant City Attorney
3    Colin Troy Bowen (SBN 152489)
     Supervising Deputy City Attorney
4    E-mail: cbowen@oaklandcityattorney.org
     OAKLAND CITY ATTORNEY
5    One Frank Ogawa Plaza, 6th Floor
     Oakland, CA 94612
6    Tel: 510.238.3601    Fax: 510.238.6500

7    Kevin D. Siegel (SBN 194787)
     E-mail: ksiegel@bwslaw.com
8    Gregory R. Aker (SBN 104171)
     E-mail: gaker@bwslaw.com
9    Christopher M. Long (SBN 305674)
     E-mail: clong@bwslaw.com
10   BURKE, WILLIAMS & SORENSEN, LLP
     1901 Harrison Street, Suite 900
11   Oakland, CA 94612-3501
     Tel: 510.273.8780    Fax: 510.839.9104

12

13

14   Attorneys for Defendant
     CITY OF OAKLAND

15

16               UNITED STATES DISTRICT COURT

17             NORTHERN DISTRICT OF CALIFORNIA

18                SAN FRANCISCO DIVISION

19

| 20 | OAKLAND BULK & OVERSIZED TERMINAL, LLC, | Case No. 3:16-cv-07014-VC |
|---|---|---|
| 21 | | **DEFENDANT CITY OF OAKLAND'S NOTICE OF RULE 12(b)(6) MOTION TO DISMISS AND RULE 12(b)(6) MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** |
| 22 | Plaintiff, | |
| 23 | v. | |
| 24 | CITY OF OAKLAND, | |
| 25 | Defendant. | Date: April 20, 2017<br>Time: 10:00 a.m.<br>Ctrm.: No. 4, 17th Floor<br>Judge: Honorable Vince Chhabria |
| 26 | | |

27

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-8781-3952 v9      - 1 -      MPA ISO MOT. TO DISMISS
                                                     16-CV-7014-VC

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Thursday, April 20, 2017, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Vince Chhabria at Courtroom No. 4, 17th Floor the United States District Courthouse, Federal Building, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant City of Oakland (the "City") will, and hereby does, move the Court for an order dismissing the third claim for relief in the Complaint ("Complaint") filed by Plaintiff Oakland Bulk & Oversized Terminal, LLC ("Plaintiff" or "OBOT"). As we set forth more fully in the accompanying memorandum, the City makes this Motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that as a matter of law, the facts alleged in the Complaint and the plain language of the written Development Agreement that is the subject of the breach of contract claim (and is attached as Exhibit A to the accompanying Request for Judicial Notice) do not support a viable claim by OBOT against the City for breach of the Development Agreement. OBOT cannot cure this breach of contract claim by amending its Complaint. Accordingly, this Motion seeks an order dismissing OBOT's third claim for relief with prejudice.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice and exhibits thereto filed and served herewith ("RJN"), the papers on file herein and such other matters as the Court may consider at or before the hearing on the Motion.

Dated: January 30, 2017           BURKE, WILLIAMS & SORENSEN, LLP


By: s/ Kevin D. Siegel
     Kevin D. Siegel
     Gregory R. Aker
     Christopher M. Long
     Attorneys for Defendant City of Oakland

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-8781-3952 v9       - 2 -       MPA ISO MOT. TO DISMISS
16-CV-7014-VC

**TABLE OF CONTENTS**

Page

I. INTRODUCTION / SUMMARY OF ARGUMENT ................................................................1

II. STATEMENT OF FACTS .........................................................................................................2

    A. Allegations and Judicially Noticeable Facts .................................................................2

    B. Procedural History ..........................................................................................................4

III. DISCUSSION ...........................................................................................................................5

    A. Applicable Legal Standards for the Motion to Dismiss ...............................................5

        1. Courts Consider Factual Allegations and Judicially Noticeable Documents ......................................................................................................5

        2. California Law Applies to the Supplemental Claim for Breach of Contract ...................................................................................................5

        3. Interpretation of a Contract May Be Resolved by Motion to Dismiss ........6

    B. OBOT Did Not Acquire a Vested Right to Store or Handle Coal or Coke ...........6

        1. A Development Agreement Provides a Limited Exception to the Rule that a City Retains Its Police Powers to Modify Land Use Regulations Until the Developer Has Incurred Construction Costs in Reliance on a Building Permit ...............................................................7

        2. The DA Did Not Create a Vested Right to Store or Handle Coal or Coke ............................................................................................................8

            a. Pursuant to Section 3.2, the Omission of an Express Right to Store or Handle Coal or Coke Means that No Such Right Was Created ...................................................................................9

                (1) The DA Expresses No Right to Store or Handle Coal or Coke ............................................................................9

                (2) The DA's Silence Means that Current Regulations Apply....................................................................................10

                (3) The City Council Properly Interpreted the DA .................11

            b. Section 3.4 Did Not Create the Claimed Vested Right .................12

        3. The City Did Not Breach the DA by Extinguishing a Non-Existent Right ............................................................................................................13

    C. Assuming Arguendo that the Coal-Coke Regulations Are Development Regulations that Are Addressed by the DA, OBOT's State Law Claim Is Time Barred ....................................................................................................................14

IV. CONCLUSION .......................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

*Donohue v. Apple, Inc.*,
   871 F.Supp.2d 913 (N.D. Cal. 2012) ...........................................................13

*F.B.T. Prods., LLC v. Aftermath Records*,
   621 F.3d 958 (9th Cir. 2010) ..........................................................................6

*Fayer v. Vaughn*,
   649 F.3d 1061 (9th Cir. 2011) .........................................................................5

*James L. Turkle Trust v. Wells Fargo & Co.*,
   2012 WL 2568208 (N.D. Cal. July 2, 2012) ................................................13

*Kroetch v. BAC Home Loan Servs.*,
   2011 WL 4502350 (N.D. Cal. Sept. 27, 2011) .............................................13

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ...........................................................................5

*Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*,
   632 F.3d 1056 (9th Cir. 2011) .........................................................................5

*Oracle Corp. v. DrugLogic, Inc.*,
   807 F.Supp.2d 885 ........................................................................................14

*PageMasters, Inc. v. Autodesk, Inc.*,
   2009 WL 825810 (D. Ariz., Mar. 30, 2009) ...................................................6

*U.S. v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ...........................................................................5

*Skilstaf, Inc. v. CVS Caremark Corp.*,
   669 F.3d 1005 (9th Cir. 2012) .........................................................................6

*Telesaurus VPC, LLC v. Power*,
   623 F.3d 998 (9th Cir. 2010) ...........................................................................5

*Trishan Air, Inc. v. Fed. Ins. Co.*,
   635 F.3d 422 (9th Cir. 2011) ...........................................................................5

## State Cases

*ACS Systems, Inc. v. St. Paul Fire and Marine Ins. Co.*,
   147 Cal.App.4th 137 (2007) ............................................................................6

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-8781-3952 v9                   - ii -                   MPA ISO MOT. TO DISMISS
                                                                  16-CV-7014-VC

*AIU Ins. Co. v. FMC Corp.*,
    51 Cal.3d 807 (1995) ...............................................................................................6

*Arviv Enterprises, Inc. v. S. Valley Area Planning Com.*,
    101 Cal.App.4th 1333 (2002) ...................................................................................8

*Avco Community Developers, Inc. v. South Coast Regional Com.*,
    17 Cal.3d 785 (1976) ...............................................................................................7

*Buena Park Motel Ass'n v. City of Buena Park*,
    109 Cal.App.4th 302 (2003) .....................................................................................1

*City of Berkeley v. Superior Court*,
    26 Cal.3d 515 (1980) .............................................................................................12

*City of Oakland v. Oakland Waterfront Company*,
    118 Cal. 160 (1897) ...............................................................................................12

*Court House Plaza Co. v. City of Palo Alto*,
    117 Cal.App.3d 871 (1981) .......................................................................................8

*Grey v. Am. Mgmt. Servs.*,
    204 Cal.App.4th 803 (2012) .....................................................................................9

*Hafen v. County of Orange*,
    128 Cal.App.4th 133 (2005) .....................................................................................7

*Hensler v. City of Glendale*
    8 Cal.4th 1 (1994) ...........................................................................................14, 15

*Hermosa Beach Stop Oil Coalition v. City of Hermosa Beach*,
    86 Cal.App.4th 534 (2001) .......................................................................................7

*Honig v. San Francisco Planning Dep't*,
    127 Cal.App.4th 520 (2005) ...................................................................................14

*Marks v. Whitney*,
    6 Cal.3d 251 (1971) ...............................................................................................11

*Moss Dev. Co. v. Geary*,
    41 Cal.App.3d 1 (1974) ...........................................................................................6

*Nat. Audubon Society v. Superior Court*,
    33 Cal.3d 419 (1983) .............................................................................................12

*Oasis W. Realty, LLC v. Goldman*,
    41 Cal.4th 811 (2011) .............................................................................................6

*Santa Margarita Area Residents Together v. San Luis Obispo Cty.*,
    84 Cal.App.4th 221 (2000) .......................................................................................7

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-8781-3952 v9      - iii -      MPA ISO MOT. TO DISMISS
16-CV-7014-VC

*Santa Monica Pines, Ltd. v. Rent Control Bd.*,
    35 Cal.3d 858 (1984) ........................................................................8

*Sprinkles v. Associated Indem. Corp.*,
    188 Cal.App.4th 69 (2010) ...............................................................6

*Toigo v. Town of Ross*,
    70 Cal.App.4th 309 (1998) ...............................................................7

**State Statutes**

Civ. Code § 1636 .................................................................................6

Gov. Code § 65009 ..................................................................1, 14, 15

Gov. Code § 65009(a)(3) ....................................................................14

Gov. Code § 65009(c)(1) ...........................................................1, 2, 14, 15

Gov. Code §§ 65864–65869.5 .............................................................7

Gov. Code § 65865.4 ......................................................................8, 12

Gov. Code § 65866 ........................................................................8, 12

Oakland Army Base Public Trust Exchange Act .................................2

Pub. Res. Code § 6009.1(c)(13) .........................................................12

Shipping Act of 1984 ..........................................................................4

Subdivision Map Act .........................................................................15

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................5

**Municipal Codes**

Oakland Planning Code Ch. 17.138 ..............................................12, 13

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-8781-3952 v9

- iv -

MPA ISO MOT. TO DISMISS
16-CV-7014-VC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION / SUMMARY OF ARGUMENT

OBOT proposes to develop a ship-to-rail Terminal ("Terminal") at the former Oakland Army Base. OBOT alleges that the City breached a Development Agreement ("DA") by adopting a health and safety code ordinance instituting a ban on storing and handling coal and coke ("Ordinance") and a resolution applying the ban to the Terminal ("Resolution"). OBOT has failed to state a claim upon which relief can be granted for two over-arching reasons. First, OBOT never acquired the claimed vested right; no such right was thus extinguished. Second, assuming arguendo that the challenged Ordinance and Resolution constitute land use regulations that could have been the subject of the DA, OBOT's challenge to the legislation is time barred.

The City Did Not Extinguish a Vested Right in Breach of the DA

Development agreements are limited, statutory exceptions to the California Supreme Court rule that a developer secures a vested right to preclude imposition of new land use regulations only after (1) the governmental entity issues a building permit, and (2) the developer substantially relies on the permit by expending construction costs.

Consistent with the California Government Code and the Oakland Planning Code, the DA created a vested right to pre-existing land use regulations only to the extent expressly stated in the DA. Section 3.2 of the DA states: "Notwithstanding any provision herein to the contrary, the permitted uses of each Phase of the Project … shall consist *only* of those described in and *expressly* permitted by" the subject City approvals and agreements, and where the documents "are silent," subsequent regulations apply. RJN, Exh. A (italics added). The DA did not expressly provide a vested right to store or handle coal or coke at the Terminal, nor any vested right to be free of further health and safety regulations of the type at issue. This silence establishes that OBOT never acquired such a vested right. Thus, the Ordinance and Resolution the City adopted in 2016 (RJN, Exhs. B and C) apply.

OBOT's reliance on sections 3.4 and 3.4.2 of the DA is misplaced. Section 3.4 does not apply when another section "expressly" addresses the issue, as section 3.2 clearly does. In addition, section 3.4 applies to regulations that "govern the development of the Project." RJN,

Exh. A.  Pursuant to California law and the Oakland Planning Code, section 3.4 only vests OBOT with rights to develop pursuant to pre-existing land use regulations (e.g., zoning and building laws).  The challenged Ordinance and Resolution do not fall within the scope of section 3.4.

In the absence of a vested right for the City to extinguish, it is axiomatic that there could be no breach of contract.

Any Challenge to the Ordinance and Resolution Is Time Barred

Even if OBOT were correct that the Ordinance and Resolution constitute development regulations that are limited by the DA, the third claim for relief is barred by the 90-day statute of limitations of California Government Code section 65009(c)(1).

## II.  STATEMENT OF FACTS

### A.  Allegations and Judicially Noticeable Facts.

The pertinent allegations (accepted as true for the limited purposes of this motion) and terms of the judicially noticeable DA, Ordinance, and Resolution referenced in the Complaint (RJN, Exhs. A – C) are set forth below.

In 1999, the U.S. Government closed the Oakland Army Base.  The U.S. transferred approximately 170 acres (the "Gateway Development Area") to the City.  Complaint, ¶ 21.[1]  The City issued a Request for Qualifications from private developers who would develop the site. Complaint, ¶ 23.  OBOT's affiliate and predecessor-in-interest, CCIG, submitted a proposal to develop the Terminal, a rail-to-ship marine terminal for bulk and oversized commodities. Complaint, ¶¶ 24-25, 29.

Prior to entering any agreements with the City, CCIG, OBOT and associated third parties identified coal as a *potential* commodity for the proposed terminal.  *See, e.g.*, Complaint, ¶¶ 25-26.  However, neither CCIG, OBOT nor any other party secured any land use approval or other

---

[1] The property transfer involved several steps.  Pursuant to the Oakland Army Base Public Trust Exchange Act, the waterfront portion and adjacent submerged lands were confirmed as sovereign land held in trust on behalf of the public, for uses such as commerce, navigation and fishing.  *See* RJN, Exh G [Land Patents, Parcels E and F-1]; *see also* RJN Exh. F [Stats. 2005, Ch. 664 §§ 3(b), (g)].  The relevance of the public trust doctrine is discussed at pages 11-12 below.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-8781-3952 v9

- 2 -

MPA ISO MOT. TO DISMISS
16-CV-7014-VC

1 right regarding the inclusion of coal or coke[2] as a commodity that could be stored or handled at

2 any proposed facility at the former Army Base.

3      Specifically, in 2012, the City and Prologis/CCIG (a joint venture of Prologis, Inc. and

4 CCIG) entered into a Lease Disposition and Development Agreement ("LDDA") for the Gateway

5 Development Area. Complaint, ¶¶ 27-28. OBOT does not, and cannot, allege that either coal or

6 coke is identified in the LDDA as a potential commodity.

7      In 2013, the City and OBOT's predecessor-in-interest entered into the DA that is the

8 subject of OBOT's third claim for breach of contract. The DA provides for the development of

9 the Terminal at the Gateway Development Area. Complaint, ¶¶ 3, 27, 29. The DA generally

10 describes the Terminal simply as a "ship-to-rail terminal designed for the export of non-

11 containerized bulk goods and the import of oversized or overweight cargo." *See* RJN, Exh. A,

12 Exh. D-2, § C(4); *see also* DA, Recital H ("Developer proposes … a marine terminal for bulk and

13 oversized cargo and other uses and improvements in accordance with the City Approvals, the

14 LDDA and this Development Agreement …."). OBOT does not allege that either coal or coke is

15 identified in the DA as a potential commodity; in fact the DA is silent regarding coal and coke.[3]

16      Beginning in 2014, the City pursued a series of legislative actions regarding a potential

17 ban on shipping coal and coke through the Terminal, including the City Council's adoption of a

18 resolution in June 2014 opposing the transport of hazardous materials, such as coal and coke,

19 through Oakland. Complaint, ¶ 36.

20      Beginning in September 2015, the City held public hearings regarding whether and under

21 what terms and conditions to ban and/or regulate coal and coke shipping, handling or storage

22 within the City. Complaint, ¶ 37. The City retained experts to gather and review evidence in

23 connection with the public hearings and to study and prepare reports on environmental issues

24 associated with coal and coke. Complaint, ¶¶ 41, 43, 45, 96, 98.

25      On June 24, 2016, the City published a staff report and proposed (1) an ordinance to ban

26

27      [2] The Complaint refers to petroleum coke (AKA "petcoke"). *See* Complaint, ¶ 2. The City refers more generally to coke, which includes petcoke.

28      [3] Relevant provisions of the DA are discussed at pages 8-13 below.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-8781-3952 v9      - 3 -      MPA ISO MOT. TO DISMISS
16-CV-7014-VC

certain activities related to coal and coke and (2) a resolution applying the ordinance to OBOT (subsequently numbered Ordinance No. 13385 C.M.S. ("Ordinance") and Resolution No. 86234 C.M.S. ("Resolution")). Complaint, ¶ 46; *see also* RJN, Exhs. B and C. The staff report included and relied upon evidence in the public hearings, the expert reports, and other evidence. *See* Complaint, ¶¶ 46, 96.

On June 27, 2016, the City Council held a public hearing, introduced the Ordinance and adopted the Resolution (together, the "Coal-Coke Regulations"). On July 19, 2016, the City Council unanimously adopted the Ordinance by the affirmative votes of eight Councilmembers. Complaint, ¶ 47; RJN, Exh. B.[4] The Ordinance was effective immediately pursuant to Charter sections 216. RJN, Exh. B, § 6. The Resolution became effective upon the effective date of the Ordinance. RJN, Exh. C, § 9.

OBOT offers a conclusory allegation that the Coal-Coke Regulations "ban coal and petcoke." Complaint, ¶ 47. In fact, , the Coal-Coke Regulations prohibit the storage and handling of coal and coke at facilities such as the proposed Terminal, while allowing some limited applications for the commodities. *See* RJN, Exhs. B and C.

OBOT has not committed to developing the Terminal for storing or handling coal or coke. Rather, OBOT is negotiating with Terminal Logistics Solutions ("TLS") regarding financing, construction and operation of the Terminal. OBOT and TLS have entered into a Sublease Option, but OBOT has not conveyed any rights to TLS. Complaint, ¶¶ 5, 35. OBOT does not allege that either coal or coke is identified in the Sublease Option.

**B. Procedural History.**

OBOT's Complaint, which was filed on December 7, 2016, alleges three Claims for Relief: (1) Unconstitutionality Under the Commerce Clause; (2) Preemption Under the Interstate Commerce Commission Termination Act [re: railroads], the Hazardous Materials Transportation Act, and the Shipping Act of 1984; and (3) Breach of Contract [the 2013 DA]. Complaint, ¶¶ 125-67. OBOT prays for declaratory and injunctive relief. Complaint, pp. 40-41.

---

[4] The Complaint incorrectly alleges the City Council adopted the Ordinance on June 27.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-8781-3952 v9                                    - 4 -                     MPA ISO MOT. TO DISMISS
                                                                                        16-CV-7014-VC

# III. DISCUSSION

## A.  Applicable Legal Standards for the Motion to Dismiss.

### 1.  Courts Consider Factual Allegations and Judicially Noticeable Documents.

A defendant may move to dismiss a claim that fails to allege facts upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Telesaurus VPC, LLC v. Power,* 623 F.3d 998, 1003 (9th Cir. 2010) (citations omitted).

The Court should "begin 'by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (citations omitted).  The Court should not accept a pleading's legal conclusions that are "'cast in the form of factual allegations.'"  *Fayer v. Vaughn,* 649 F.3d 1061, 1064 (9th Cir. 2011) (citations omitted).

A court may take judicial notice of the content and existence of "matters of public record," but not of facts "subject to reasonable dispute."  *Lee v. City of Los Angeles,* 250 F.3d 668, 689–90 (9th Cir. 2001).  A court may also consider an extrinsic document if its "authenticity is not contested and the plaintiff's complaint necessarily relies on" it.  *Id.* at 688; *U.S. v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003) (incorporation by reference proper "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim").

### 2.  California Law Applies to the Supplemental Claim for Breach of Contract.

California law applies.  As provided on the face of the DA: "This Development Agreement, and the rights and obligations of the Parties, shall be governed by and interpreted in accordance with the Laws of the State of California."  RJN, Exh. A, § 14.11.  Moreover, as a supplemental claim for relief, California law applies.  *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC,* 632 F.3d 1056, 1060 (9th Cir. 2011).

"'When interpreting state law, federal courts are bound by decisions of the state's highest court.'"  *Trishan Air, Inc. v. Fed. Ins. Co.,* 635 F.3d 422, 427 (9th Cir. 2011) (citation omitted).  In the absence of a controlling decision, "'a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.'"  *Id.* (citation omitted).

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-8781-3952 v9                          - 5 -                          MPA ISO MOT. TO DISMISS
16-CV-7014-VC

**3.      Interpretation of a Contract May Be Resolved by Motion to Dismiss.**

"[T]he interpretation of a contract, including resolution of an arguable ambiguity, is a question of law" that may be resolved on a pleadings challenge. *Sprinkles v. Associated Indem. Corp.*, 188 Cal.App.4th 69, 76 (2010) (demurrer sustained; citing *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18 (1995)). "'[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.'" *ACS Systems, Inc. v. St. Paul Fire and Marine Ins. Co.*, 147 Cal.App.4th 137, 147 (2007) (demurrer sustained; quoting *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1265 (1992)).

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting ...." Cal. Civ. Code § 1636. "[I]ntent is to be inferred, if possible, solely from the written provisions of the contract," read in their "ordinary and popular sense," unless technical or special usage applies. *AIU Ins. Co. v. FMC Corp.*, 51 Cal.3d 807, 822 (1995) (citing Cal. Civ. Code §§ 1638, 1639). "'The language of a contract is to govern its interpretation, if [it] is clear and explicit, and does not involve an absurdity.'" *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 963 (9th Cir. 2010) (quoting Cal. Civ. Code § 1639). Courts will thus not add a term where the contract is silent. *Moss Dev. Co. v. Geary*, 41 Cal.App.3d 1, 9 (1974) (citing Cal. Civ. Proc. Code § 1858 and *Jensen v. Traders & Gen. Ins. Co.*, 52 Cal.2d 786, 790 (1959)).

A federal court properly dismisses a breach of contract claim under California law where its interpretation of the unambiguous contract provisions demonstrates there was no breach, despite allegations to the contrary. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017-18 (9th Cir. 2012); *see also PageMasters, Inc. v. Autodesk, Inc.*, 2009 WL 825810, at *11 (D. Ariz., Mar. 30, 2009) (dismissing breach of contract claim pursuant to California law; despite plaintiff's contentions, subject provision was unambiguous and the alleged facts did not constitute a breach).

**B.      OBOT Did Not Acquire a Vested Right to Store or Handle Coal or Coke.**

OBOT must plead: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis*

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-8781-3952 v9                    - 6 -                    MPA ISO MOT. TO DISMISS
16-CV-7014-VC

*W. Realty, LLC v. Goldman*, 41 Cal.4th 811, 821 (2011).  The Complaint, when read along with the terms of the DA upon which the allegations are based, fails to state a breach of contract claim.

The Complaint presumes that OBOT acquired a vested right to store and handle coal and coke, and that the City breached the DA by attempting to take that right away.  However, review of the law governing development agreements and pertinent contract provisions that OBOT ignored establishes that OBOT never acquired any right to store or handle coal or coke.  Thus, OBOT has no basis to claim a breach of a right that it never acquired.

> **1.      A Development Agreement Provides a Limited Exception to the Rule that a City Retains Its Police Powers to Modify Land Use Regulations Until the Developer Has Incurred Construction Costs in Reliance on a Building Permit.**

The landmark California Supreme Court case regarding vested rights provides that a developer has no vested right in existing regulations until (1) permits authorizing construction have been issued (*e.g.*, a building permit), and (2) the developer has performed substantial work in reliance thereon.  *Avco Community Developers, Inc. v. South Coast Regional Com.*, 17 Cal.3d 785, 796 (1976); *see also Toigo v. Town of Ross*, 70 Cal.App.4th 309, 321 (1998) ("In California, the developer's right to complete a project as proposed does not vest until a valid building permit, or its functional equivalent, has been issued and the developer has performed substantial work and incurred substantial liabilities in good faith reliance on the permit"); *Hermosa Beach Stop Oil Coalition v. City of Hermosa Beach*, 86 Cal.App.4th 534, 542, 551-52 (2001) (no vested right to drill for oil on city land pursuant to lease or use permit; owner thus subject to subsequent ordinance banning oil drilling); *Hafen v. County of Orange*, 128 Cal.App.4th 133, 135, 142-43 (2005) (owner could not rely on subdivision map approval; county retained its police powers to impose subsequent regulations that restricted use of property).

The State Legislature adopted the Development Agreement Statute (Cal. Gov't Code §§ 65864 – 65869.5, the "DA Statute") to allow parties to create limited exceptions to the foregoing rule.  *Santa Margarita Area Residents Together v. San Luis Obispo Cty.*, 84 Cal.App.4th 221, 229-30 (2000).  The DA Statute "permit[s] local governments to freeze zoning early in the development process and before the issuance of building permits."  *Id.*; *see also id.* at 226-27 ("the statute allows a city or county to freeze zoning and other land use regulation

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-8781-3952 v9                             - 7 -                             MPA ISO MOT. TO DISMISS
                                                                                    16-CV-7014-VC

applicable to specified property"). Notably, the statute applies to zoning and land use regulations, not to the health and safety regulations that are at issue here.

The DA Statute describes the scope of zoning and land use regulations for which vested rights may be acquired. Unless the development agreement provides otherwise:

> rules, regulations, and official policies **governing permitted *uses* of the land, governing *density*, and governing *design, improvement, and construction standards and specifications***, applicable to development of the property subject to a development agreement, shall be those rules, regulations, and official policies in force at the time of execution of the agreement. A development agreement ***shall not prevent*** a city ... in subsequent actions applicable to the property, **from applying new rules, regulations, and policies which do not conflict with those rules, regulations, and policies applicable to the property** as set forth herein ....

Cal. Gov't Code § 65866 (emphasis added).

Section 65865.4 of the DA Statute lists the types of regulations that may be locked-in by a development agreement. The list only includes "any applicable general or specific plan, zoning, subdivision, or building regulation." Cal. Gov't Code § 65865.4.

"[T]he rights which may 'vest' through reliance on a government permit are no greater than those *specifically granted* by the permit itself." *Santa Monica Pines, Ltd. v. Rent Control Bd.*, 35 Cal.3d 858, 866 (1984) (italics added); *see also Arviv Enterprises, Inc. v. S. Valley Area Planning Com.*, 101 Cal.App.4th 1333, 1348-50 (2002) (issued permits did not create vested right to proceed with unpermitted development); *Court House Plaza Co. v. City of Palo Alto*, 117 Cal.App.3d 871 (1981) (developer only "acquires a vested right to complete construction *in accordance with the terms of the permit*") (emphasis added). Thus, a development agreement creates vested zoning and land use rights only to the extent specifically set forth therein.

## 2. The DA Did Not Create a Vested Right to Store or Handle Coal or Coke.

The Complaint presents a conclusory, unsupported contention that OBOT had acquired a vested right to store and handle coal and coke. But OBOT fails to discuss DA provisions that address the creation of vested rights and govern the circumstances in which zoning and land use regulations are frozen. Review of (a) DA section 3.2, and (b) DA sections 3.4 and 3.4.1 shows OBOT never acquired such a vested right.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

a. **Pursuant to Section 3.2, the Omission of an Express Right to Store or Handle Coal or Coke Means that No Such Right Was Created.**

(1) **The DA Expresses No Right to Store or Handle Coal or Coke.**

Consistent with the underlying statutory and case law, the DA expressly vested OBOT with certain, limited rights to develop the Terminal pursuant to then-existing zoning and land use regulations, where expressly permitted. As stated in section 3.2:

> **This Agreement vests** in Developer **the right to develop** the Project in accordance with the terms and conditions of this Agreement, the City Approvals and the Existing City Regulations; provided that City shall have the right to control development of the Project in accordance with the provisions of this Agreement, the LDDA and each Ground Lease. Notwithstanding any provision herein to the contrary, **the permitted uses** of each Phase of the Project, **the density and intensity of use** of each Phase**, and the siting, height, envelope, and massing and size of proposed buildings** in each Phase, **shall consist only of those described in and** *expressly permitted* **by**, and subject to all terms, conditions and requirements of, the City Approvals, the Subsequent Approvals, the LDDA, and the applicable Ground Lease for each Phase…. This Agreement, the City Approvals, the LDDA and the Ground Lease, **and where such instruments are** *silent*, **the Applicable City Regulations**, shall control the overall design, development and construction of the Project, and all on- and off-site improvements and appurtenances in connection therewith. In the event of any inconsistency between the Applicable City Regulations and this Agreement, this Agreement shall control, except that if the inconsistency cannot be reconciled by application of this rule of construction, the provision which, as determined by the City Council, best gives effect to the purposes of this Agreement shall control.

Exh. A to RJN, § 3.2 (emphasis added).

The DA omits any reference to coal or coke, and does **not** state that OBOT has the right to store or handle "any and all" non-containerized bulk goods. Given that section 3.2 provides that permitted uses are only those "expressly permitted" by the approvals and agreements listed therein, and that the DA did not expressly identify any right to store or handle coal or coke, OBOT never acquired a vested right to store or handle coal or coke at the Terminal.

Further, the DA includes an integration clause: "This written Agreement and the exhibits hereto contain all the representations and the entire agreement between the Parties with respect to the subject matter hereof…." RJN, Exh. A, § 14.6. Thus, any alleged pre-DA "agreements" regarding coal would be irrelevant. *Grey v. Am. Mgmt. Servs.*, 204 Cal.App.4th 803, 807 (2012) ("[b]ecause the contract says it is the entire agreement, common sense dictates that it supersedes

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-8781-3952 v9                    - 9 -                    MPA ISO MOT. TO DISMISS
                                                                   16-CV-7014-VC

1    other prior agreements related to" the subject of the agreement).

2         Moreover, the Complaint's allegations that interested parties had identified coal as a

3    commodity of interest, prior to approval of the DA, supports the City. Given that a development

4    agreement may create an exception to a city's police power right to impose new regulations, it

5    was incumbent upon OBOT (or, more accurately, its predecessor-in-interest) to ensure that the

6    DA articulated the circumstances in which it obtained vested rights. But the DA does not provide

7    for development of a terminal designed for storing and handling coal and coke. Pursuant to

8    California law, this absence confirms that the City retained its police powers to impose new

9    regulations governing the storing and handling of coal and coke at the Terminal.[5]

10        In sum, the language of the DA, read in light of underlying law governing vested rights

11   and development agreements, compels the conclusion that OBOT did not acquire a vested right to

12   preclude subsequent regulations regarding storage and handling operations at the Terminal.

13               **(2)    The DA's Silence Means that Current Regulations Apply.**

14        In addition, section 3.2 (quoted above) provides that where the DA and related approvals

15   and agreements are *silent*, "Applicable City Regulations" shall control. DA section 1.1 defines

16   "Applicable City Regulations" to include (i) "Existing City Regulations" and (ii) "other City

17   Regulations." RJN, Exh. A. Critical here is the definition of "City Regulations":

18            The General Plan of City, the Oakland Army Base Redevelopment Plan (as
             amended prior to the Adoption Date), Oakland Army Base Reuse Plan (as
19            amended prior to the Adoption Date), and **all other ordinances, resolutions,**
             codes, rules, regulations and policies **in effect as of the time in question.**
20

21   RJN, Exh. A, § 1.1 (emphasis added).

22        Notably, the definition of City Regulations specifies that certain applicable regulations are

23   locked-in as of the "Adoption Date" (*i.e.*, the date of approval of the DA), and that "all other"

24

25        [5] The DA also contemplated that the rights of OBOT as occupant of the land would be
     governed by a separate Ground Lease and that, "in the event of any conflict between any
26   provision of this [Development] Agreement and any provision of any applicable Ground Lease,
     the provision of the applicable Ground Lease shall govern and control." RJN, Exh. A, § 14.27.
27   The City reserves its argument that the 2016 Ground Lease, which requires the OBOT to comply
     with all laws, requires OBOT to comply with the Ordinance and Resolution.
28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Oakland

OAK #4852-8781-3952 v9                    - 10 -              MPA ISO MOT. TO DISMISS
                                                              16-CV-7014-VC

1    regulations are those "in effect as of the time in question." Given that a core purpose of the DA is

2    to differentiate between those regulations that existed at the time the DA was adopted from those

3    that City subsequently adopted, "the time in question" necessarily means the time when OBOT

4    seeks to engage in a particular activity (*i.e.*, the present).

5         Thus, pursuant to section 3.2, when the DA and associated approvals or agreements are

6    silent (*e.g.*, as to the development of the Terminal for the storage and handling of any *particular*

7    non-containerized bulk good), the ordinances and resolutions in effect as of the time in question

8    (*i.e.*, now) apply to "control the overall design, development and construction of the Project, and

9    all on- and off-site improvements and appurtenances in connection therewith." The DA is

10   deafeningly silent as to coal and coke, and the Complaint does not allege any other approval or

11   agreement addresses any rights to store or handle these commodities. Accordingly, the

12   ordinances and resolutions now in effect (*i.e.*, the Coal-Coke Regulations) govern.

13                    **(3)    The City Council Properly Interpreted the DA.**

14        The foregoing analysis is dispositive. However, if there is any doubt, the Court should

15   defer to the City's interpretation and resolution of the issue.

16        First, the final sentence of section 3.2 of the DA provides that, "[i]n the event of an

17   inconsistency" between the DA and the Applicable City Regulations (which includes both

18   Existing City Regulations and current City Regulations, as discussed above), which inconsistency

19   remains unresolved, the City Council determines which interpretation "best gives effect to the

20   purposes of this Agreement ...." When it adopted the Resolution, the City Council determined,

21   that OBOT had not obtained a vested right to store or handle coal or coke pursuant to section 3.2.

22   Exh. C to RJN, pp. 2-3. Thus, the City Council properly exercised its authority as the decision-

23   maker as to the application of the Coal-Coke Regulations.

24        Second, the Terminal property is subject to the public trust. The City administers the land

25   in trust for the people of California. Stats. 2005, Ch. 664 [RJN, Exh. F]; *see also* RJN, Exh. C,

26   p. 5. Under the public trust doctrine, "[t]he power of the state to control, regulate and utilize its

27   navigable waterways and the lands lying beneath them, when acting within the terms of the trust,

28   is absolute." *Marks v. Whitney*, 6 Cal.3d 251, 260 (1971). That power may not be abdicated or

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-8781-3952 v9                    - 11 -                    MPA ISO MOT. TO DISMISS
16-CV-7014-VC

delegated to private parties.  Pub. Res. Code § 6009.1(c)(13); *see City of Berkeley v. Superior Court,* 26 Cal.3d 515, 521 (1980).  Thus, grants to private parties of rights in public trust lands are construed extremely narrowly, in a manner "most favorable to the state."  *City of Oakland v. Oakland Waterfront Company,* 118 Cal. 160, 175 (1897).  A private holder of an interest in trust property (*e.g.*, OBOT) "can claim no vested right to bar recognition of the trust or state action to carry out its purposes."  *Nat. Audubon Society v. Superior Court,* 33 Cal.3d 419, 437, 440 (1983).  Therefore, this Court should reject any effort by OBOT to interpret the DA in a manner that would provide OBOT an (unexpressed) vested right to preclude the City's actions as trustee.

### b.     Section 3.4 Did Not Create the Claimed Vested Right.

The Complaint suggests, in passing, that section 3.4 of the DA created a vested right for the developer to be free from *any* regulations not existing as of the effective date of the DA.  *See* Complaint, ¶¶ 31, 162.  The suggestion is baseless.

First, the leading clause of section 3.4 states:  "Except as expressly provided in this Agreement and the City Approvals," then-existing regulations shall govern.  RJN, Exh. A.  As discussed above, section 3.2 expressly provides that City regulations now in effect govern the development and use of the project when the DA is silent.  Since the DA is silent as to whether coal and coke may be stored and handled at the Terminal, the Coal-Coke Regulations apply.

Second, section 3.4 concerns "Existing City Regulations" that "govern the development of the Project."  RJN, Exh. A.  The Coal-Coke Regulations do not govern the development of the Terminal; they govern post-development operations.  Indeed, as discussed above, the DA Statute explicitly provides that a development agreement may freeze regulations that are set forth in general and specific plans, and in zoning, subdivision and building regulations and that govern permitted land use, design, density, improvements and construction.  Cal. Gov't Code §§ 65865.4, 65866.  The Coal-Coke Regulations are none of these.

The chapter of the Oakland Planning Code ("OPC") governing development agreements (Chapter 17.138) is consistent with the DA Statute.  Section 17.138.015(B) states, in pertinent part, that a development agreement may provide "a contractual guarantee that the project covered by the agreement may be pursued under the applicable procedural criteria, if any, and other

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-8781-3952 v9                      - 12 -                      MPA ISO MOT. TO DISMISS
                                                                        16-CV-7014-VC

**zoning regulations**, and plans or other documents referred to by any such criteria, as they existed when the agreement was approved and *notwithstanding any subsequent changes in said **zoning regulations** or documents*." RJN, Exh. E. (emphasis added).

The Ordinance is not a zoning or land use regulation that may be subject to a freeze, as provided by the DA Statute and OPC Ch. 17.138. The Ordinance amends the City's Health and Safety Code by adding Chapter 8.60 to the Oakland Municipal Code (*see* RJN, Exh. B, § 3), and concerns post-development operations with respect to certain commodities (neither of which is covered by the DA). OBOT retains its vested right to develop the Terminal as provided by the DA and then-existing zoning and land use laws, pursuant to the DA Statute and OPC Ch. 17.138.

**3.    The City Did Not Breach the DA by Extinguishing a Non-Existent Right.**

OBOT relies on section 3.4.2 of the DA to assert the City breached the DA. *See, e.g.*, Complaint, ¶¶ 30, 31, 163. The reliance is misplaced. Section 3.4.2 is merely an "exception to Developer's vested rights" set out elsewhere in the DA. Section 3.4.2 does not purport to *create* any vested right. Therefore, by definition, section 3.4.2 cannot form the basis for OBOT's breach claim as set out in the Complaint.[6]

Further, the City invoked section 3.4.2, which authorizes the City to eliminate a vested right under certain circumstances, as a separate and independent ground for imposing the Ordinance. RJN, Exh. C, § 4. Since OBOT never acquired a vested right regarding the subject matter of the Coal-Coke Regulations, section 3.4.2 cannot be the basis for a breach claim.

Based on the foregoing, this Court should grant the City's motion. *See, e.g., James L. Turkle Trust v. Wells Fargo & Co.*, 2012 WL 2568208, at *6 (N.D. Cal. July 2, 2012), aff'd, 602 F. App'x 360 (9th Cir. 2015) ("Because no amendment can cure these deficiencies without contradicting the terms of the governing contracts, dismissal is without leave to amend"); *Donohue v. Apple, Inc.*, 871 F.Supp.2d 913, 932 (N.D. Cal. 2012) (motion to dismiss granted due

---

[6] Moreover, section 3.4.2 creates a contractual right for the City, not for OBOT. Thus, OBOT does not have a breach claim. *Cf. Kroetch v. BAC Home Loan Servs.*, 2011 WL 4502350, at *3 (N.D. Cal. Sept. 27, 2011) (breach claim dismissed where the subject provision was for defendant's benefit, not plaintiff's).

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-8781-3952 v9                    - 13 -                    MPA ISO MOT. TO DISMISS
16-CV-7014-VC

to absence of breach of an express term); *Oracle Corp. v. DrugLogic, Inc.*, 807 F.Supp.2d 885, 901 (N.D. Cal. 2011 (motion to dismiss granted due to lack of breach in light of clear and explicit contract terms).[7]

## C. Assuming Arguendo that the Coal-Coke Regulations Are Development Regulations that Are Addressed by the DA, OBOT's State Law Claim Is Time Barred.

Because the DA can only vest land use and zoning regulations, OBOT's claim that the City breached the DA by imposing the Coal-Coke Regulations hinges on the determination whether the Ordinance and Resolution are new zoning or land use regulations. As discussed above, the breach of contract claim fails because the Coal-Coke Regulations are not land use or zoning regulations. However, if the Court accepts OBOT's characterization of the Coal-Coke Regulations, OBOT's claim for breach of the DA is time-barred.

California Government Code section 65009 provides a 90-day limitations period pursuant to which a party must file and serve a complaint challenging a local government's land use decision. *See, e.g., Honig v. San Francisco Planning Dep't*, 127 Cal.App.4th 520, 526 (2005). The short limitations period "provide[s] certainty for property owners and local governments" regarding land use decisions. *Id.*; Cal. Gov't Code § 65009, subdivs. (a)(3) and (c)(1). To determine whether section 65009(c)(1) applies, the courts analyze the gravamen of the claim, not the form of the action or the theory upon which relief is sought. *Hensler v. City of Glendale* 8 Cal.4th 1, 22-23 (1994). *See also Honig*, 127 Cal.App.4th at 528.

The California Supreme Court's decision in *Hensler* demonstrates the long reach of this rule. A property owner pleaded an inverse condemnation claim based on the City's imposition of an ordinance prohibiting development on ridgelines. *Hensler*, 8 Cal.4th at 7-8. The property owner asserted that the five-year statutes of limitations for inverse condemnation claim applied.

---

[7] Further, the City has not taken action to prohibit OBOT from developing or using the Terminal pursuant to the DA. OBOT has not entered into a lease with any party for the construction or operation of the Terminal (*see* Complaint, ¶¶ 5, 35), and OBOT may continue to pursue its development efforts. Meanwhile, if OBOT prevails on its challenge to the legality of the Coal-Coke Regulations (*e.g.*, on its preemption claim), the courts will have ruled that the City cannot enforce the Ordinance and/or Resolution vis-à-vis the OBOT. But such a result could not support a breach of contract claim, either presently or at the time of such a ruling.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-8781-3952 v9

- 14 -

MPA ISO MOT. TO DISMISS
16-CV-7014-VC

*Id.* at 22-23 (citing Cal. Civ. Proc. Code §§ 318 and 319). However, because the gravamen of the suit was a claim that the "ordinance is invalid on its face or as applied," the Court held that 90-day statute of limitations provided by the Subdivision Map Act ("SMA") barred the suit. *Id.* at 26. In addition, the Court noted that the 90-day limitations period of the SMA was comparable to the limitations period of California Government Code section 65009 (which at that time was 120 days), and that section 65009 applied, in the alternative, to any facial challenge to the ordinance. *See id.* at 22, 28.[8]

Thus, assuming arguendo that OBOT may have obtained a vested right not to be subject to the Coal-Coke Regulations, OBOT is challenging the legality of a land use decision to which California Government Code section 65009(c)(1) applies. Since OBOT filed this action on December 7, 2016, more than 90 days after the July 19, 2016 effective date of the Coal-Coke Regulations, the action is time-barred.

## IV. CONCLUSION

For the foregoing reasons, this Court should dismiss the third claim for relief with prejudice.

Dated: January 30, 2017

Respectfully submitted,

BURKE, WILLIAMS & SORENSEN, LLP


By: s/ Kevin D. Siegel
    Kevin D. Siegel
    Gregory R. Aker
    Christopher M. Long
    Attorneys for Defendant City of Oakland

---

[8] *Buena Park Motel Ass'n v. City of Buena Park*, 109 Cal.App.4th 302 (2003) is also instructive. At issue was a challenge by an association of motels to ordinances that imposed length-of-stay restrictions (e.g., prohibiting the rental of a room for 30 days or more). The motels alleged that the ordinances were in excess of the city's police powers and were preempted, and that the ordinances violated their rights to equal protection and constituted a taking. *Id.* at 304-05, 308. The suit was time-barred by California Government Code section 65009(c)(1). Irrespective of the plaintiffs' theory, and even though the ordinance governed the operation of motels rather than the core right to use the land for motel purposes, section 65009 applied.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4852-8781-3952 v9

- 15 -

MPA ISO MOT. TO DISMISS
16-CV-7014-VC