COLIN O'BRIEN, SB No. 309413
cobrien@earthjustice.org
ADRIENNE BLOCH, SB No. 215471
abloch@earthjustice.org
HEATHER M. LEWIS, SB No. 291933
hlewis@earthjustice.org
EARTHJUSTICE
50 California Street, Suite 500
San Francisco, CA  94111
Tel. (415) 217-2000 / Fax. (415) 217-2040

*Attorneys for Proposed Defendant-Intervenors*
*Sierra Club and San Francisco Baykeeper*

JESSICA YARNALL LOARIE, SB No. 252282
jessica.yarnall@sierraclub.org
JOANNE SPALDING, SB No. 169560
joanne.spalding@sierraclub.org
SIERRA CLUB
2101 Webster Street, Suite 1300
Oakland, CA 94612
Tel. (415) 977-5636 / Fax. (510) 208-3140

*Attorneys for Proposed Defendant-Intervenor*
*Sierra Club*

(List of Counsel continued on next page)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| OAKLAND BULK & OVERSIZED TERMINAL, LLC, | Case No. 16-cv-7014 VC |
| Plaintiff, | **SIERRA CLUB'S AND SAN FRANCISCO BAYKEEPER'S NOTICE OF MOTION, MOTION TO INTERVENE, MEMORANDUM IN SUPPORT OF MOTION, AND REQUEST TO FILE RULE 12(b)(6) MOTION TO DISMISS** |
| v. | |
| CITY OF OAKLAND, | |
| Defendant, | Hearing:   Apr. 20, 2017 |
| and | Time:      10:00 a.m. |
| SIERRA CLUB and SAN FRANCISCO BAYKEEPER, | Judge:     Hon. Vince Chhabria |
| | Place:     Courtroom 4, 17th Floor |
| Proposed Defendant-Intervenors. | Action Filed:  Dec. 7, 2016 |

DANIEL P. SELMI, SB No. 67481
dselmi@aol.com
919 Albany Street
Los Angeles, CA 92662
Tel. (213) 736-1098 / Fax. (949) 675-9871

*Attorney for Proposed Defendant-Intervenor
Sierra Club*

1

## **NOTICE**

2    TO THIS HONORABLE COURT AND COUNSEL FOR THE PARTIES:

3    PLEASE TAKE NOTICE, pursuant to Civil Local Rule 7-2, that on April 20, 2017, at 10:00

4    a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Vince

5    Chhabria, at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102,

6    Sierra Club and San Francisco Baykeeper, by counsel, will move the Court for leave to intervene as

7    defendants in the above-entitled action.

8

## **MOTION**

9    Pursuant to Federal Rule of Civil Procedure 24, Sierra Club and San Francisco Baykeeper

10    respectfully move to intervene as defendant-intervenors in the above-captioned case. Counsel for

11    Plaintiff Oakland Bulk and Oversized Terminal, LLC has been consulted; they are reserving their

12    position pending review of this motion. Defendant City of Oakland does not oppose this motion.

13    This motion is supported by the accompanying Memorandum; Declarations of Raymond

14    Durkee, Sejal Choksi-Chugh, Brittany King, Kent Lewandowski, and Jessica Yarnall Loarie; a

15    Proposed Answer; and such oral argument as the Court may allow.

16    WHEREFORE, Sierra Club and San Francisco Baykeeper pray that the Court grant the

17    instant motion, and thereby grant Sierra Club and San Francisco Baykeeper leave to intervene as

18    defendants in this action.

19    In addition, if intervention is granted, Sierra Club and San Francisco Baykeeper further

20    request that the Court, in lieu of the Proposed Answer, accept Proposed Defendant-Intervenors' Rule

21    12(b)(6) Motion to Dismiss lodged concurrently with this motion.[1]

22    DATED: February 16, 2017           */s/ Colin O'Brien*

23                                      COLIN O'BRIEN
                                        *Attorney for Defendant-Intervenors Sierra Club and*
24                                      *San Francisco Baykeeper*

25    _____

26    [1] Rule 24 requires an intervention motion to "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). To comply with this requirement, a Proposed Answer is attached. *See* Fed. R. Civ. P. 7(a) (defining "pleadings" to include an answer but

27    not a motion to dismiss). However, if intervention is granted, Proposed Defendant-Intervenors request the Court accept for filing the concurrently lodged Rule 12(b)(6) Motion to Dismiss instead

28    of the Proposed Answer. *See* Fed. R. Civ. P. 12(b) (stating certain defenses "must be made before pleading if a responsive pleading is allowed").

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................................................1

II.   BACKGROUND .............................................................................................................1

III.  STANDARDS FOR INTERVENTION ...........................................................................4

IV.   ARGUMENT ...................................................................................................................5

     A.    The Court should grant intervention as of right. ...................................................6

          1.    The motion is timely. ...............................................................................6

          2.    Proposed Intervenors have protectable interests relating to the validity of the Ordinance and Resolution..................................................................7

          3.    The disposition of this case would impair Proposed Intervenors' ability to protect their interests..............................................................................11

          4.    Intervenors' interests are not adequately represented by existing parties.....................................................................................................11

     B.    Alternatively, the Court should grant permissive intervention. ...................................14

V.    CONCLUSION...............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003), *as amended* (May 13, 2003) ......................................11, 12, 13, 14

*Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*,
309 F.3d 1113 (9th Cir. 2002) ...........................................................................................................6

*Cal. Dump Truck Owners Ass'n v. Nichols*,
275 F.R.D. 303 (E.D. Cal. 2011) .......................................................................................................9

*California v. Tahoe Reg'l Planning Agency*,
792 F.2d 775 (9th Cir. 1986) ...........................................................................................................11

*Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*,
152 F.3d 1184 (9th Cir. 1998) .........................................................................................................12

*Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*,
386 U.S. 129 (1967)............................................................................................................................7

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) .................................................................................................. *passim*

*Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior*,
100 F.3d 837 (10th Cir. 1996) ...........................................................................................................8

*County of Fresno v. Andrus*,
622 F.2d 436 (9th Cir. 1980) ...................................................................................................5, 8, 13

*County of Orange v. Air Cal.*,
799 F.2d 535 (9th Cir. 1986) .............................................................................................................5

*Idaho Farm Bureau Fed'n v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995) ..................................................................................................6, 7, 8, 13

*Kootenai Tribe of Idaho v. Veneman*,
313 F.3d 1094 (9th Cir. 2002) ...................................................................................................14, 15

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) ...................................................................................................7, 8, 11

*Nat. Res. Defense Council v. McCarthy*,
No. 16-cv-02184-JST, 2016 WL 6520170 (N.D. Cal. Nov. 3, 2016)................................................6

*Nuesse v. Camp*,
  385 F.2d 694 (D.C. Cir. 1967) ..................................................................................5

*Prete v. Bradbury*,
  438 F.3d 949 (9th Cir. 2006) ....................................................................................8

*Sagebrush Rebellion, Inc. v. Watt*,
  713 F.2d 525 (9th Cir. 1983) .................................................................5, 7, 8, 14

*San Juan County v. United States*,
  503 F.3d 1163 (10th Cir. 2007) .........................................................................7, 10

*In re Sierra Club*,
  945 F.2d 776 (4th Cir. 1991) ..................................................................................12

*Sierra Club v. U.S. Envtl. Prot. Agency*,
  995 F.2d 1478 (9th Cir. 1993) ..............................................................................5, 7

*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) .........................................................................5, 11, 14

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972) ..........................................................................................11, 14

*United States v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004) ....................................................................................6

*United States v. Carpenter*,
  526 F.3d 1237 (9th Cir. 2008) ..................................................................................9

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ....................................................................................5

*Vivid Entm't, LLC v. Fielding*,
  774 F.3d 566 (9th Cir. 2014) ....................................................................................5

*WildEarth Guardians v. Nat'l Park Serv.*,
  604 F.3d 1192 (10th Cir. 2010) ....................................................................9, 11, 12

*Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) .........................................................................5, 7, 14

*Yniguez v. Ariz.*,
  939 F.2d 727 (9th Cir. 1991) ....................................................................................5

**Statutes**

California Environmental Quality Act ................................................................3, 13

iii

Hazardous Materials Transportation Act, 49 U.S.C. §§ 5101 *et seq.* .................................4, 14

Interstate Commerce Commission Termination Act, 49 U.S.C. §§ 10101 *et seq.* ..........................4, 14

Oakland City Ordinance No. 13385.................................................................... *passim*

Oakland City Resolution No. 86234 .................................................................. *passim*

Shipping Act of 1984, 46 U.S.C. §§ 40101 *et seq.* .........................................................4, 14

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...........................................................................15

Fed. R. Civ. P. 24...............................................................................11

Fed. R. Civ. P. 24(a) ........................................................................ *passim*

Fed. R. Civ. P. 24(a)(2)...................................................................6, 11, 14

Fed. R. Civ. P. 24(b) ......................................................................5, 14, 15

Fed. R. Civ. P. 24(b)(1)(B) .......................................................................5

Fed. R. Civ. P. 24(b)(1)(B)(3).....................................................................5

Fed. R. Civ. P. 24(b)(2)–(3) ....................................................................14

U.S. Const. art. I, § 8, cl. 3...................................................................4, 14

# MEMORANDUM IN SUPPORT

## I. INTRODUCTION

Sierra Club and San Francisco Baykeeper (collectively, "Proposed Intervenors") request the Court grant them leave to intervene as of right, or in the alternative, permission to intervene, in the above-captioned case. Proposed Intervenors seek to protect their significant interests in the validity of Oakland City Ordinance No. 13385 ("Ordinance") and Resolution No. 86234 ("Resolution"). Proposed Intervenors have worked for years to protect the health and environment of communities in Oakland, and they supported adoption of the Ordinance and Resolution as part of these efforts.

## II. BACKGROUND

In the summer of 2016, the Oakland City Council adopted the Ordinance and its companion Resolution to prohibit the handling or storage of coal or petroleum coke ("coke" or "petcoke") at bulk material facilities in Oakland—including at a facility proposed for development at the former Oakland Army Base. Compl. (ECF #6) ¶ 47; Def.'s Req. for Judicial Notice ("Def.'s RJN"), Exs. B (ECF #20-2), C (ECF #20-3). Enacted after secret, back-door plans to develop a coal and coke facility at the Army Base were exposed, the Ordinance and Resolution reflect the City Council's determinations that "Storing or Handling of Coal or Coke would have substantial public health and safety impacts to Oakland Constituents . . . and would create conditions substantially dangerous to the health and/or safety of such persons." Def.'s RJN Ex. B (ECF #20-2) at 6 (statement of "Findings" in § 8.60.020(B)(1)(d)).

Proposed Intervenor Sierra Club is a nonprofit environmental organization that supported adoption of the Ordinance and Resolution. Sierra Club is a national nonprofit organization of nearly 700,000 members, including more than 150,000 members in California. King Decl. ¶ 2. Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and encouraging humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. King Decl. ¶ 2. Consistent with its mission, Sierra Club is committed to stopping the many environmental and human health impacts associated with coal and fossil fuels. King Decl. ¶¶ 4, 5, 7; Lewandowski Decl. ¶¶ 6, 7. Sierra Club has members residing in

1

Oakland who live, work, and recreate near the former Army Base, and who have an interest in ensuring that their community remains a safe and healthy place. King Decl. ¶¶ 1, 2, 4–7; Lewandowski Decl. ¶¶ 2, 3, 6, 7.

Proposed Intervenor San Francisco Baykeeper ("Baykeeper") is a regional nonprofit organization that also supported the Ordinance and Resolution. Baykeeper's mission is to protect and enhance the water quality of the San Francisco Bay-Delta estuary and its watershed for the benefit of its ecosystems and the surrounding human communities. Choksi-Chugh Decl. ¶ 6. As part of this goal, Baykeeper works to ensure that state and federal environmental laws are implemented and enforced. *Id*. ¶ 7. Baykeeper has over 5,000 members and supporters who primarily reside in the San Francisco Bay Area, most of whom have longstanding and ongoing personal interests in the mission of the organization because they live, work, and recreate in or around the San Francisco Bay. *Id*. ¶ 8. Baykeeper's members also live, work, and recreate near the former Army Base, and have an interest in ensuring that their community can be a safe and healthy place. Choksi-Chugh Decl. ¶¶ 9, 15–20; Durkee Decl. ¶¶ 7–9, 15, 17–19.

In April 2015, Oakland community members, including Proposed Intervenors, learned for the first time of plans to redevelop the former Oakland Army Base for purposes of exporting coal. Choksi-Chugh Decl. ¶ 10. According to an April 7, 2015 article in the *Richfield Reaper*, a local Utah newspaper, the Utah Permanent Community Impact Fund Board had approved a $53 million loan to four Utah counties—the coal-producing counties of Sevier, Sanpete, Carbon, and Emery—to allow them to purchase an interest in a portion of the Army Base redevelopment project known as West Gateway (the "Terminal"). Choksi-Chugh Decl., Ex. 1 at 2 (*Richfield Reaper* article). According to Malcolm Nash, the economic development director of Sevier County, this financial interest in and dedicated shipping capacity at the Terminal would be used to "find[] a new home for . . . coal." *Id.* Proposed Intervenors sought to bring this information to the attention of the City Council and the broader public. King Decl. ¶ 4.

On September 21, 2015, the Oakland City Council held the first of several public hearings on the potential health and safety impacts of coal and coke products in the City and the City's ability to regulate these products. Choksi-Chugh Decl. ¶ 14a; Compl. (ECF #6) ¶ 37. Proposed Intervenors

submitted four separate comment letters prior to the hearing, supported by extensive attachments, including expert reports. *See* Yarnall Loarie Decl., Exs. 1 (letter dated Sept. 2, 2015), 2 (letter dated Sept. 14, 2015), and 3 (letter dated Sept. 21, 2015); Choksi-Chugh Decl., Ex. 2 (letter dated Sept. 21, 2015). Proposed Intervenors also gave oral testimony at the public hearing concerning expected harms from the handling or storage of coal or coke. Choksi-Chugh Decl. ¶ 14a. Subsequently, Proposed Intervenors submitted a fifth comment letter to the City on October 6, 2015. Yarnall Loarie Decl., Ex. 4.

On October 2, 2015, Proposed Intervenors and others filed suit against the City of Oakland in the Alameda County Superior Court to compel the City of Oakland to prepare a supplemental or subsequent Environmental Impact Report ("EIR") in order to evaluate the environmental impacts of a coal storage and handling facility, which had not been contemplated or analyzed when the original EIR for the Army Base redevelopment was completed. Yarnall Loarie Decl., Ex. 7 (verified petition for writ of mandate in Alameda Superior Court case no. RG15788084); Choksi-Chugh Decl. ¶ 12. On December 1, 2015, all parties filed a joint stipulation to voluntarily dismiss that action after the plaintiffs, including Proposed Intervenors, "learned of circumstances and information of which they were previously unaware from [the City's] demurrer papers." Yarnall Loarie Decl., Ex. 9 at 2 (joint stipulation). Specifically, the City acknowledged it was evaluating both "discretionary decisions it may take in the future with respect to" the Terminal and "the scope of additional environmental review, if any," for future decisions. Yarnall Loarie Decl., Ex. 8 at 9, n.8 (City's demurrer). Despite these acknowledgments, the City continues to contest Proposed Intervenors' view that the City necessarily is required under the California Environmental Quality Act ("CEQA") to conduct additional environmental review for the Oakland Army Base; the City's contrary position is reserved in the joint stipulation agreement dismissing the case. *See*, *e.g.*, *id.*

Independent of Proposed Intervenors' CEQA lawsuit, the City retained two experts to evaluate the health and safety impacts of coal and petcoke storage and handling in Oakland. In or around November 2015, City Councilmember Dan Kalb retained Zoe Chafe to prepare a report evaluating the health and safety impacts of the proposed bulk coal facility on the Terminal property. Compl. (ECF #6) ¶¶ 97, 98. On May 3, 2016, City Council itself resolved to retain a private

3

consultant in order to analyze the potential health and safety impacts of coal and petcoke storage, handling, and/or transport in Oakland, and subsequently hired Environmental Science Associates to prepare a report. *Id*. ¶¶ 40, 41, 45.

On June 27, 2016, City Council held a public hearing on the Ordinance and Resolution. Compl. (ECF #6) ¶ 47. Proposed Intervenors submitted another written comment letter to the City on the date of the hearing. Yarnall Loarie Decl., Ex. 5 (letter dated June 27, 2016). Proposed Intervenors' staff and members also attended the hearing and gave oral testimony. King Decl. ¶ 4; Choksi-Chugh Decl. ¶ 14c. At the end of the meeting, City Council voted to adopt the Resolution and to introduce the Ordinance. Compl. (ECF #6) ¶ 47; Choksi-Chugh Decl. ¶ 14c.

On July 19, 2016, City Council held its final hearing on the Ordinance. Proposed Intervenors submitted yet another public comment letter to City Council on that date—their seventh on the subject—and Proposed Intervenors' members and staff attended the hearing and gave oral testimony. Yarnall Loarie Decl., Ex. 6 (letter dated July 19, 2016); King Decl. ¶ 4; Choksi-Chugh Decl. ¶ 14d. At the conclusion of this hearing, City Council voted to adopt the Ordinance. Compl. (ECF #6) ¶ 47; Def.'s RJN, Ex. B (ECF #20-2) at 14.[2]

Plaintiff OBOT filed this action on December 7, 2016. Compl. (ECF #6). OBOT holds the rights to redevelop land at the former Oakland Army Base, including at the Terminal. *Id*. ¶ 3. The Complaint alleges that the Ordinance and Resolution violate the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, and that they are preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§ 10101 *et seq*., the Hazardous Materials Transportation Act ("HMTA"), 49 U.S.C. §§ 5101 *et seq*., and the Shipping Act of 1984, 46 U.S.C. §§ 40101 *et seq*. Compl. (ECF #6) ¶¶ 125–60. The Complaint further alleges that the City breached its contract with OBOT by adopting the Ordinance and Resolution. *Id*. ¶¶ 161–63.

## III.    STANDARDS FOR INTERVENTION

The Ninth Circuit has established a four-part test for deciding applications for intervention as of right under Federal Rule of Civil Procedure 24(a):

---

[2] The Complaint incorrectly alleges the Ordinance was adopted on June 27, 2016. Compl. (ECF #6) ¶ 47. It was introduced on June 27, 2016, and passed on July 19, 2016. Def.'s RJN, Ex. B (ECF #20-2) at 14.

1
2
3
4

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

5 *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v.*

6 *U.S. Envtl. Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993)). If an applicant meets these

7 standards, they must be permitted to intervene. *Yniguez v. Ariz.*, 939 F.2d 727, 731 (9th Cir. 1991)

8 (citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983)). An applicant need not

9 separately establish Article III standing. *Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 573 (9th Cir.

10 2014).

11      Rule 24(a) is construed "broadly in favor of proposed intervenors," taking into account

12 "practical and equitable considerations." *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th

13 Cir. 2002) (citations omitted). Rule 24(a) does not require a specific legal or equitable interest, and

14 "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many

15 apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v.*

16 *Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir.

17 1967)). The allegations of a proposed intervenor must be credited as "true absent sham, frivolity or

18 other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

19      Additionally, under Rule 24(b)(1)(B), courts have "broad discretion" to grant permissive

20 intervention to applicants that, through a timely motion, assert a claim or defense that shares a

21 common question of law or fact with the principal action. *County of Orange v. Air Cal.*, 799 F.2d

22 535, 539 (9th Cir. 1986) (citation omitted). In exercising its discretion, a court must consider

23 whether intervention will cause undue delay or prejudice existing parties. *See* Fed. R. Civ. P.

24 24(b)(1)(B)(3).

25 **IV.    ARGUMENT**

26      For the following reasons, the Court should grant Proposed Intervenors intervention as of

27 right under Federal Rule of Civil Procedure 24(a), or, in the alternative, the Court should grant

28 permissive intervention under Rule 24(b).

**A.      The Court should grant intervention as of right.**

      **1.      The motion is timely.**

A motion to intervene under Rule 24(a) must be timely. Fed. R. Civ. P. 24(a)(2). Timeliness is evaluated according to three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (quoting *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002)). When a motion is made "at an early stage of the proceedings," it follows that the motion will neither prejudice other parties nor delay the proceeding. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

Proposed Intervenors' motion is timely because this case is in its earliest stages. The Complaint was filed on December 7, 2016. (ECF #6). This motion is being filed just a little more than two months later, shortly after the Defendant City filed its first responsive pleading. No discovery has occurred, and the Case Management Statement is not due until February 28. *See* Clerk's Notice (ECF #15). No substantive matters have been heard or ruled upon. In addition, in order to avoid any disruption or delay in the proceedings, Proposed Intervenors have noticed the hearing for this motion on the same day that the City has noticed the hearing for its motion to dismiss, so that all motions may be heard together. *See* Def.'s Mot. to Dismiss (ECF #19).

Because this motion is filed in the earliest stages of this action, the motion is timely and granting intervention will neither prejudice other parties nor will it cause delay. As the Ninth Circuit has explained: "the parties would not have suffered prejudice from the grant of intervention at that early stage, and intervention would not cause disruption or delay in the proceedings." *Citizens for Balanced Use*, 647 F.3d at 897 (finding motion timely when filed three months after the complaint and less than two weeks after defendant filed its answer); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding motion timely when filed four months after complaint and two months after answer, but "before any hearings or rulings on substantive matters"); *Nat. Res. Defense Council v. McCarthy*, No. 16-cv-02184-JST, 2016 WL 6520170, at *3 (N.D. Cal. Nov. 3, 2016) (finding motion timely when filed before answer and "any substantive orders").

### 2.    Proposed Intervenors have protectable interests relating to the validity of the Ordinance and Resolution.

Proposed Intervenors satisfy the second element of intervention by right because they assert multiple "significantly protectable" interests related to the property and transaction which are the subjects of the action. *Wilderness Soc'y*, 630 F.3d at 1177. The interest test is a threshold question, and does not require a specific legal or equitable interest. *Id.* at 1179. Nor does it require that the asserted interest be protected by the statutes under which litigation is brought. *Id.* Instead, "the operative inquiry should be whether the 'interest is protectable under some law' and whether 'there is a relationship between the legally protected interest and the claims at issue.'" *Id.* at 1180 (quoting *Sierra Club*, 995 F.2d at 1484). An applicant for intervention satisfies the interest test "if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). Furthermore, at least one circuit has held that when the "significant public interests" associated with environmental quality are at stake, the interest requirement for intervention may be relaxed. *San Juan County v. United States*, 503 F.3d 1163, 1201 (10th Cir. 2007) (citing *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 136 (1967)).

#### a.    Proposed Intervenors supported passage of the Ordinance and Resolution and participated throughout the legislative process.

Proposed Intervenors have an interest in this litigation because they worked extensively to secure the passage of the Ordinance and Resolution. In fact, Proposed Intervenors have worked since early 2015 to ensure that communities in Oakland will be protected from the adverse health impacts of coal storage and handling facilities.

It is well-settled in the Ninth Circuit that "[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n*, 58 F.3d at 1397 (citations omitted). For example, in *Sagebrush Rebellion, Inc. v. Watt*, the Audubon Society was entitled to intervene in an action challenging the creation of a conservation area the Society had supported. 713 F.2d at 527. The Society had actively participated in the administrative process surrounding the designation of the conservation area, and on those grounds the Ninth Circuit held that "there can be no serious dispute in this case concerning . . . the

7

existence of a protectable interest on the part of the applicant." *Id.* at 528; *accord Idaho Farm Bureau Fed'n*, 58 F.3d at 1397–98 (finding environmental groups that were active in the administrative process leading to endangered species listing were entitled to intervene in litigation seeking to invalidate listing); *see also Prete v. Bradbury*, 438 F.3d 949, 955 (9th Cir. 2006) (allowing "chief petitioner" and "main supporter" of ballot measure to intervene in action challenging measure's constitutionality); *Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996) (wildlife photographer with consistent record of advocating for protection of spotted owl entitled to intervene in case challenging the listing of the owl as endangered species).

Proposed Intervenors supported the passage of the Ordinance and Resolution that this suit challenges. Proposed Intervenors learned of Plaintiff's plans to store and handle coal at the Terminal in April 2015, Choksi-Chugh Decl. ¶ 10, and sought to bring this information to light by informing the City Council and the broader public, King Decl. ¶ 4. Proposed Intervenors sent seven comment letters to the City over the course of eleven months regarding the health and safety impacts of coal storage and handling facilities, supported by extensive attachments including expert reports. Yarnall Loarie Decl., Exs. 1–6; Choksi-Chugh Decl., Ex. 2. Representatives of Proposed Intervenors also attended and provided oral testimony at three public hearings. King Decl. ¶ 4; Choksi-Chugh Decl. ¶ 14. Proposed Intervenors have a protectable interest in seeing the Ordinance and Resolution upheld, and this interest would be practically impaired by an adverse decision in this case. *See* King Decl. ¶¶ 1, 2, 4–7; Choksi-Chugh Decl. ¶¶ 10, 11, 14. As champions of the Ordinance and Resolution, Proposed Intervenors are entitled to intervene as of right in this suit that challenges the validity of these enactments.

**b.    Proposed Intervenors' members are precisely those individuals the Ordinance was enacted to protect.**

Proposed Intervenors also have a protectable interest in this case because their members are "the intended beneficiaries of this law." *California ex rel. Lockyer*, 450 F.3d at 441. Public interest groups have a protectable interest in litigation when the underlying action challenges a legislative measure that was intended to protect their members. *Andrus*, 622 F.2d at 438–39 (finding a

protectable interest for public interest groups where "[t]he individual members . . . are precisely those Congress intended to protect . . . and precisely those who will be injured" if the challenged law were invalidated). For environmental groups seeking to intervene to defend a law, "[i]t is enough that the [groups'] members benefit from the challenged legislation by way of improved air quality and health." *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 307 (E.D. Cal. 2011).

Here, Proposed Intervenors' members are precisely those individuals whom the Ordinance and Resolution were designed to protect, and they are precisely those who will be injured if the Ordinance and Resolution are invalidated. The Oakland City Council determined the storage and handling of coal would pose substantial dangers to the health and safety of "citizens, residents, workers, employers, and/or visitors of the City of Oakland." Def.'s RJN, Ex. B (ECF #20-2) at 4 (describing Ordinance's "Purpose" in § 8.60.010). Proposed Intervenors' members fall within that sphere of protection, and include both residents of Oakland, King Decl. ¶¶ 2, 4, Lewandowski Dec. ¶ 2, Choksi-Chugh Decl. ¶¶ 9, 15, 16, and people who regularly visit and work in the vicinity of the Terminal, King Decl. ¶¶ 1, 2, 4–6, Lewandowski Dec. ¶ 7, Choksi-Chugh Decl. ¶¶ 17–20, Durkee Decl. ¶¶ 7–9, 14, 15, 17–19. Proposed Intervenors have demonstrated a protectable interest that would be impaired by an adverse decision in this case because "[their] members benefit from the challenged legislation by way of improved air quality and health." *Cal. Dump Truck Owners Ass'n*, 275 F.R.D. at 307.

### c.    Proposed Intervenors' environmental concerns constitute a legally protectable interest.

Proposed Intervenors' concern for the environment constitutes an independent protectable interest sufficient to support intervention. *See Citizens for Balanced Use*, 647 F.3d at 897 ("Applicants have a significant protectable interest in conserving and enjoying the wilderness character of the Study Area."); *United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008) ("[I]ntervenors were entitled to intervene because they had the requisite interest in seeing that the wilderness area be preserved for the use and enjoyment of their members."); *see also WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (stating it is "'indisputable' that

a prospective intervenor's environmental concern is a legally protectable interest") (quoting *San Juan County*, 503 F.3d at 1199).

Proposed Intervenors are environmental advocacy organizations with demonstrated interests in protecting and improving air quality in the City of Oakland, and preserving the water quality of the San Francisco Bay. King Decl. ¶¶ 2, 4; Choksi-Chugh Decl. ¶¶ 6, 7. Proposed Intervenors and their members are concerned about the negative health impacts that coal dust from a coal terminal could have on the surrounding community, and the impacts that coal dust could have on water quality. King Decl. ¶¶ 4–6; Durkee Decl. ¶ 15. Sierra Club has worked to address air quality at the Port of Oakland since at least 2008. Lewandowski Decl. ¶¶ 4–6. Sierra Club has long taken an interest in coal and coke nationally and in California in particular, and has submitted numerous public records requests in Oakland to uncover information about coal and coke at the Terminal. King Decl. ¶ 4. Likewise, Baykeeper has a history of working on water quality issues in Oakland, and has brought citizen enforcement actions under the Clean Water Act against multiple industrial facilities in Oakland for illegally discharging pollutants into the Bay. Choksi-Chugh Decl. ¶¶ 7, 21b. Baykeeper also initiated an enforcement action against the East Bay Municipal Utilities District and its city satellites, including Oakland, to reduce sewage discharges into San Francisco Bay. *Id*. ¶ 21a.

In addition, Proposed Intervenors' have an interest in "conserving and enjoying" the environment surrounding the Terminal site. *Citizens for Balanced Use*, 647 F.3d at 897. Proposed Intervenors' members recreate in and enjoy the environment surrounding the Terminal. Members enjoy sailing, fishing, and kayaking on the waters adjacent to the Terminal. King Decl. ¶¶ 4–6; Lewandowski Decl. ¶ 7; Choksi-Chugh Decl. ¶¶ 8, 9, 17, 18; Durkee Decl. ¶¶ 7–9, 17. Their use and enjoyment of the recreational opportunities provided by the Bay will be harmed if the Ordinance is invalidated and a coal terminal is built and operated. King Decl. ¶ 7; Lewandowski Decl. ¶¶ 7, 9; Choksi-Chugh Decl. ¶¶ 8, 9, 17, 18; Durkee Decl. ¶¶ 17, 18. In addition, members enjoy wildlife in the area near the Terminal, and have specific aesthetic concerns that would be harmed if the Terminal is built and operated as planned. King Decl. ¶¶ 6, 7; Choksi-Chugh Decl. ¶¶ 19, 20; Durkee Decl. ¶¶ 18, 19.

NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
Case No. 16-cv-7014-VC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**3.    The disposition of this case would impair Proposed Intervenors' ability to protect their interests.**

Rule 24(a) requires intervenors to show that "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). If a proposed intervenor "would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Sw. Ctr. For Biological Diversity*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 advisory committee's notes). This inquiry "presents a minimal burden," *WildEarth Guardians*, 604 F.3d at 1199, and a determination of impairment tends to follow once intervenors have satisfied the interest test's inquiry of whether the applicant "will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer*, 450 F.3d at 441; *id.* at 442 ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it.").

As described in each of the sections above, an adverse decision in this case would impair Proposed Intervenors' ability to protect their interests, and Proposed Intervenors have satisfied this third requirement for intervention as of right.

**4.    Intervenors' interests are not adequately represented by existing parties.**

A proposed intervenor merely needs to show that the representation of its interests "may be" inadequate, and "the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986) ("The applicant is required only to make a minimal showing that representation of its interests may be inadequate.").

"The 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of existing parties.'" *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), *as amended* (May 13, 2003)). Specifically, courts may consider "whether the interest of a present party is such that it will *undoubtedly* make *all* of a proposed intervenor's arguments." *Arakaki*, 324 F.3d at 1086 (emphasis added); *see also Sw. Ctr. for Biological Diversity*, 268 F.3d at 824 ("It is sufficient for Applicants to

11

1  show that, because of the difference in interests, it is likely that Defendants will not advance the

2  same arguments as Applicants.").

3      The City of Oakland cannot adequately represent the specific interests of Proposed

4  Intervenors while simultaneously representing the broad public interests of its constituents. "[I]t is

5  'on its face impossible' for a government agency to carry the task of protecting the public's interests

6  and the private interests of a prospective intervenor." *WildEarth Guardians*, 604 F.3d at 1200. This

7  is true even when the would-be intervenors are public interest groups asserting a subset of the broad

8  interests that the government must consider. *See Californians For Safe & Competitive Dump Truck*

9  *Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (finding inadequate representation by

10  state agency where "interests of [organization's] members were potentially more narrow and

11  parochial than the interests of the public at large"); *In re Sierra Club*, 945 F.2d 776, 779–80 (4th Cir.

12  1991) (Sierra Club's interests not adequately represented by state environmental agency that "may

13  share some objectives" because agency is obligated to represent all citizens of the state, not just

14  "subset of citizens" that supported the regulation).

15      The City is obligated to balance broad public interests and represent all of its constituents,

16  while Proposed Intervenors represent only a small subset of those interests—namely, environmental

17  protection and public health—and represent only the subset of the City's constituents who supported

18  the Ordinance. The City is obligated to encourage economic growth, manage the City's finances,

19  develop housing, maintain infrastructure, and manage benefit programs, among many other goals.

20  The City must balance all of these objectives and simultaneously represent all of its constituents,

21  while Proposed Intervenors focus on environmental protection, public health, and representing its

22  members who supported the Ordinance. The City's broad interests are such that it may not make all

23  of Proposed Intervenors' arguments, and the City may not be capable and willing to make such

24  arguments. *Arakaki*, 324 F.3d at 1086. In fact, the motions to dismiss filed by the City and by

25  Proposed Intervenors assert separate grounds for dismissal, making it clear that in this case, the City

26  has not made all Proposed Intervenors arguments. *Compare* Def.'s Mot. to Dismiss (ECF #19), *with*

27  Proposed Intervenors' Mot. to Dismiss (filed concurrently with this Motion).

28

NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
Case No. 16-cv-7014-VC

1      Representation by the City may also be inadequate because the City and Proposed

2  Intervenors have a history of adversity and prior litigation on the subject matter of this case. The

3  Ninth Circuit has repeatedly found that in cases where environmental groups have been involved in

4  advocacy directed at the government, the groups were entitled to intervene as a matter of right

5  because they could not rely on the government to represent them adequately. *See Citizens for*

6  *Balanced Use*, 647 F.3d at 898–901 (refusing to apply presumption of adequate representation by

7  government when government was simultaneously appealing separate action on the same subject

8  matter brought by the same environmental group that sought to intervene); *Idaho Farm Bureau*

9  *Fed'n*, 58 F.3d at 1398 (finding inadequate representation of environmental group's interests in

10  action challenging agency decision, when that decision was originally compelled by environmental

11  group's lawsuit); *see also Andrus*, 622 F.2d at 439 (finding inadequate representation where "the

12  [government] began its rulemaking only reluctantly after [proposed intervenor] brought a law suit

13  against it").

14      The present case is analogous. Proposed Intervenors have engaged in extended advocacy

15  directed at the City, aiming to compel the City to conduct additional environmental review of the

16  Terminal should it be used for coal storage or handling. In October 2015, Proposed Intervenors

17  (along with two other groups) brought suit against the City in state court seeking declaratory and

18  injunctive relief under CEQA that would require the City to examine and address the environmental

19  and health impacts of a coal and coke storage and handling facility. Choksi-Chugh Decl. ¶ 12;

20  Yarnall Loarie Decl., Ex. 7 (verified petition). Although the case was voluntarily dismissed by

21  stipulation, the City does not accept Proposed Intervenors' position that coal may not be stored or

22  handled at the former Oakland Army base unless or until further environmental analysis is

23  completed pursuant to CEQA. Yarnall Loarie Decl., Ex. 8, at 9 n.8 (statement in City's demurrer,

24  reserving its position on when CEQA review may be required—if ever). This prior and ongoing

25  adversity between the City and Proposed Intervenors on the subject of the Terminal indicates that

26  their interests are sufficiently different, and the City will not "undoubtedly" make all of Proposed

27  Intervenors' arguments. *See Arakaki*, 324 F.3d at 1086. Consequently, Proposed Intervenors have

28

met the "minimal burden" of showing that the City's representations of its interests may be

inadequate. *Trbovich*, 404 U.S. at 538 n.10.

In addition to examining the interests of existing parties, courts may consider whether a

proposed intervenor would provide any necessary elements in the proceeding that other parties

would neglect. *Arakaki*, 324 F.3d at 1086. This factor also weighs heavily in favor of permitting

intervention in this case. Environmental groups have been found to have special expertise and offer a

materially different perspective from governmental entities. *Sagebrush Rebellion, Inc.*, 713 F.2d at

528. Proposed Intervenors have worked since early 2015 to ensure that communities in Oakland will

be protected from the adverse health and environmental impacts of coal storage and handling

facilities, and consequently have deep familiarity with those communities and the history of the

specific Terminal project. King Decl. ¶¶ 4, 5; Choksi-Chugh Decl. ¶¶ 10, 11. Additionally, Proposed

Intervenors have extensive subject matter expertise on environmental issues, including water quality

in the San Francisco Bay, Choksi-Chugh Decl. ¶ 21, and the specific air and water quality impacts of

coal, King Decl. ¶ 4. Consequently, Proposed Intervenors will "offer important elements to the

proceedings that the existing parties would likely neglect." *Sw. Ctr. for Biological Diversity*, 268

F.3d at 823.

Because each of the four requirements under Rule 24(a)(2) is satisfied, the Court should

grant Proposed Intervenors intervention as of right.

**B.      Alternatively, the Court should grant permissive intervention.**

Proposed Intervenors also satisfy the requirements for permissive intervention under Rule

24(b). Permissive intervention is appropriate when (1) movant files a timely motion; (2) prospective

intervenor has a claim or defense that shares a common question of law or fact with the main action;

and (3) intervention will not unduly delay or prejudice existing parties. Fed. R. Civ. P. 24(b)(2)–(3).

Here, Proposed Intervenors intend to address the same questions of law that are the heart of

this litigation: whether the Ordinance violates the Commerce Clause; whether it is preempted under

ICCTA, HMTA, or the Shipping Act; and whether it breaches the Development Agreement. *See*

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110–11 (9th Cir. 2002) *abrogated on other*

*grounds by Wilderness Soc'y*, 630 F.3d 1179 (conservation groups met test for permissive

intervention where they asserted defenses "directly responsive" to plaintiffs' complaint). This motion is timely, and intervention will not cause delay or prejudice the existing parties. *See* discussion *supra* at 6. Furthermore, as also discussed above, Proposed Intervenors may assist the Court in resolving this case by providing expertise on coal, air, and water quality issues. *See Kootenai Tribe*, 313 F.3d at 1111 (noting "the presence of intervenors would assist the court"); *see also* discussion *supra* at 10, 14. Accordingly, even if the Court does not grant intervention as of right, permissive intervention is warranted here.

## V.    CONCLUSION

For the foregoing reasons, Proposed Intervenors Sierra Club and San Francisco Baykeeper have satisfied the requirements for intervention as a matter of right under Rule 24(a), and alternatively, permissive intervention under Rule 24(b). Proposed Intervenors therefore respectfully request that the Court grant this motion to intervene.

For reasons discussed in the notice of motion, Proposed Intervenors also request that if intervention is granted, the Court accept Proposed Intervenors' concurrently lodged Rule 12(b)(6) Motion to Dismiss instead of the lodged Proposed Answer.


DATED: February 16, 2017                    Respectfully submitted,

                                             */s/ Colin O'Brien*
                                            COLIN O'BRIEN, SB No. 309413
                                            cobrien@earthjustice.org
                                            ADRIENNE BLOCH, SB No. 215471
                                            abloch@earthjustice.org
                                            HEATHER M. LEWIS, SB No. 291933
                                            hlewis@earthjustice.org
                                            EARTHJUSTICE
                                            50 California Street, Suite 500
                                            San Francisco, CA 94111
                                            Tel: (415) 217-2000
                                            Fax: (415) 217-2040

                                            *Attorneys for Proposed Defendant-Intervenors Sierra Club and San Francisco Baykeeper*


                                            JESSICA YARNALL LOARIE, SB No. 252282
                                            jessica.yarnall@sierraclub.org
                                            JOANNE SPALDING, SB No. 169560
                                            joanne.spalding@sierraclub.org

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SIERRA CLUB
2101 Webster Street, Suite 1300
Oakland, CA 94612
Tel. (415) 977-5636 / Fax. (510) 208-3140

DANIEL P. SELMI, SB No. 67481
DSelmi@aol.com
919 Albany Street
Los Angeles, CA 90015
Tel. (949) 922-7926 / Fax: (510) 208-3140

*Attorneys for Proposed Defendant-Intervenor Sierra Club*

NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
Case No. 16-cv-7014-VC

1

**TABLE OF ATTACHMENTS**

2      Declaration of Raymond Durkee

3      Declaration of Sejal Choksi-Chugh

4          Exhibit 1      "Project could transform local coal market to international," Richfield Reaper,

5      April 7, 2015.

6          Exhibit 2      Public comment letter dated September 21, 2015.

7      Declaration of Brittany King

8      Declaration of Kent Lewandowski

9      Declaration of Jessica Yarnall Loarie

10         Exhibit 1      Public comment letter dated September 2, 2015.

11         Exhibit 2      Public comment letter dated September 14, 2015.

12         Exhibit 3      Public comment letter dated September 21, 2015.

13         Exhibit 4      Public comment letter dated October 6, 2015.

14         Exhibit 5      Public comment letter dated June 27, 2016.

15         Exhibit 6      Public comment letter dated July 19, 2016.

16         Exhibit 7      Verified Petition for Writ of Mandate under the California Environmental

17     Quality Act, filed October 2, 2015, in Communities for a Better Environment v. City of Oakland,

18     No. RG15788084 (Cal. Super. Ct., filed Oct. 2, 2015).

19         Exhibit 8      Respondent City of Oakland's Memorandum of Points and Authorities in

20     Support of Demurrer to Verified Petition for Writ of Mandate, filed November 9, 2015, in

21     Communities for a Better Environment v. City of Oakland, No. RG15788084 (Cal. Super. Ct., filed

22     Oct. 2, 2015).

23         Exhibit 9      Joint Stipulation Regarding Voluntary Dismissal of Action, filed December 1,

24     2015, in Communities for a Better Environment v. City of Oakland, No. RG15788084 (Cal. Super.

25     Ct., filed Oct. 2, 2015).

26         Proposed Answer

27

28

NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
Case No. 16-cv-7014-VC