1   Barbara J. Parker (SBN 69722)
    City Attorney
2   Otis McGee, Jr. (SBN 71885)
    Chief Assistant City Attorney
3   Colin Troy Bowen (SBN 152489)
    Supervising Deputy City Attorney
4   OAKLAND CITY ATTORNEY
    One Frank Ogawa Plaza, 6th Floor
5   Oakland, CA 94612
    Tel:  510.238.3601     Fax:  510.238.6500
6
    Kevin D. Siegel (SBN 194787)
7   E-mail:  ksiegel@bwslaw.com
    Gregory R. Aker (SBN 104171)
8   E-mail:  gaker@bwslaw.com
    Timothy A. Colvig (SBN 114723)
9   E-mail:  tcolvig@bwslaw.com
    Christopher M. Long (SBN 305674)
10  E-mail:  clong@bwslaw.com
    BURKE, WILLIAMS & SORENSEN, LLP
11  1901 Harrison Street, Suite 900
    Oakland, CA  94612-3501
12  Tel:  510.273.8780     Fax:  510.839.9104

13  Attorneys for Defendant
    CITY OF OAKLAND

14

15

16                  UNITED STATES DISTRICT COURT

17                NORTHERN DISTRICT OF CALIFORNIA

18                   SAN FRANCISCO DIVISION

19

20  OAKLAND BULK & OVERSIZED              Case No.  3:16-cv-07014-VC
    TERMINAL, LLC,
21                                        **DEFENDANT CITY OF OAKLAND'S**
                  Plaintiff,              **TRIAL BRIEF**
22  v.
                                          Trial Date:  January 16, 2018
23  CITY OF OAKLAND,                      Time:        8:30 a.m.
                                          Ctrm.:       No. 2, 17th Floor
24                Defendant.              Judge:       Honorable Vince Chhabria

25  SIERRA CLUB and SAN FRANCISCO
    BAYKEEPER,
26
                  Defendant-Intervenors.
27

28

BURKE, WILLIAMS &
  SORENSEN, LLP
 ATTORNEYS AT LAW
    OAKLAND                                          CITY'S TRIAL BRIEF
                                                    NO. 16-CV-7014-VC
    OAK #4835-6275-2346 v4

## I.   INTRODUCTION

This action will determine whether Plaintiff Oakland Bulk & Oversized Terminal, LLC ("OBOT") may store and handle millions of tons of coal and coke adjacent to an already heavily pollution-impacted residential neighborhood, and just yards away from the Bay Bridge Toll Plaza and a bike path.  After OBOT's intentions to do so were disclosed, the City properly exercised its rights under the Development Agreement ("DA"), and in compliance with the federal law, to prohibit the storing and handling of coal and coke at the proposed bulk goods terminal ("Terminal") based on substantial evidence that such a facility would be substantially dangerous to health and safety.

Regarding its breach claim, OBOT asks this Court to reject the substantial evidence considered by the City Council, and for the Court to substitute its judgment for that of the Council, even to hold a *de novo* trial.  But OBOT cannot prove that the City breached the DA, no matter its theory.  Notwithstanding the dirty, dusty, spontaneously combustible, and explosive nature of coal and coke, OBOT bases its claims upon wishful promises that five to ten million tons of coal and coke will be handled and stored at the terminal each year—in a perfectly designed terminal—that will somehow be hermetically sealed and will suffer no equipment malfunctions, compliance lapses, accidents, or any other problem or complication.  The Council properly rejected OBOT's attempt to force Oakland residents already disproportionately burdened by pollution to be canaries in OBOT's coal mine.

Nor can OBOT prove that application of the Ordinance to OBOT violates the Commerce Clause or is preempted.

The City discusses in this Trial Brief certain issues for the Court to consider prior to and during the trial, the resolution of which will significantly impact the scope of the trial.[1]

## II.   FACTS

The City sets forth below a truncated statement of facts to be proven at trial.

### A.      Plaintiff OBOT and Third Parties.

OBOT is a limited liability company.  Its sole member is California Capital & Investment

---

[1] Defendant-Intervenors concur in the filing of this trial brief.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4835-6275-2346 v4

CITY'S TRIAL BRIEF
NO. 16-CV-7014-VC

1   Group, Inc. ("CCIG").  CCIG is also the parent of Oakland Global Rail Enterprise, LLC

2   ("OGRE").  OBOT, CCIG, and OGRE are California entities.

3          Terminal Logistics Solutions ("TLS") is a legal stranger to OBOT, CCIG, and OGRE.

4   TLS is a wholly-owned local subsidiary of Bowie Resources Partners ("Bowie").  Bowie is an

5   out-of-state coal producer and marketer.  Bowie is TLS's sole source of revenue.

6   **B.      Brief Overview of Background Facts.**

7          After a long closure process, the City adopted plans for redeveloping the former Oakland

8   Army Base, including the West Gateway where OBOT proposes to build the Terminal.  On July

9   16, 2013, the City and OBOT's predecessor entered into the DA.  The DA does not discuss coal

10  or any other commodity.  In section 3.4.2, OBOT agreed that the City retained authority to apply

11  subsequently-adopted regulations to prevent substantially dangerous health and safety conditions.

12  In February 2016, the City conveyed to OBOT a ground lease for the site.  OBOT is acting as a

13  landlord and developer and will not own or operate the Terminal.

14         OBOT confirmed the parties' understanding that coal would not be stored and handled at

15  the Terminal.  Later, the City learned that OBOT was pursuing plans to develop the Terminal to

16  handle five or more million tons of coal and coke annually.

17         The City commenced a nearly year-long process, including public hearings, to evaluate

18  whether OBOT's coal and coke plans would create substantially dangerous health and safety

19  conditions and whether to apply post-DA legislation, pursuant to DA section 3.4.2.  The City,

20  OBOT and its supporters, and members of the public submitted extensive evidence to the City

21  Council for its consideration.  After the public hearing process, the City adopted the Ordinance,

22  banning the storage and handling of coal and coke at bulk material facilities, and the Resolution

23  applying the Ordinance to OBOT and the Terminal pursuant to DA section 3.4.2

24                          **III.  LEGAL AND TRIAL ISSUES**

25  **A.      The Scope of Health and Safety Impact Evidence Regarding the Breach of Contract
           Claim Is Contained Entirely Within the Record Before the City Council, which**
26         **Record Should Be Received into Evidence.**

27         OBOT claims that the City breached the DA by applying the Ordinance to it.  First

28  Amended Complaint (Dkt. 74), ¶¶ 161-67 and Prayer, ¶¶ A(5) & B; *see also* OBOT's MSJ

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4835-6275-2346 v4

- 2 -

CITY'S TRIAL BRIEF
NO. 16-CV-7014-VC

1    (Dkt. 135), p. 1:15-16; *see also* Pretrial Conference Statement filed contemporaneously, p. 2.

2    The DA states: "Notwithstanding any other provision of this Agreement to the contrary,

3    City shall have the right" to apply post-DA laws if the "*City determines based on substantial*

4    *evidence* and after a public hearing that a failure to do so would place existing or future occupants

5    or users of the Project, adjacent neighbors, or any portion thereof … in a condition substantially

6    dangerous to their health or safety." DA § 3.4.2 (emphasis added). It also states that application

7    of a post-DA law is an "exception to Developer's vested rights." *Id.*

8    The universe of relevant evidence regarding the breach claim is all within the public

9    record before the City, as discussed in the summary judgment papers.[2] Where a public agency's

10    proceeding "adjudicates individual rights and interests, findings are required and the reviewing

11    court looks to see whether the findings are supported by the evidence." *Bright Dev. v. City of*

12    *Tracy*, 20 Cal.App.4th 783, 794 (1993). The courts review the agency's record for such evidence.

13    *Foster v. Civil Serv. Comm'n*, 142 Cal.App.3d 444, 453 (1983); *see also W. States Petroleum*

14    *Ass'n v. Superior Court*, 9 Cal.4th 559, 576, 578 (1995).

15    The courts will generally not consider extra-record evidence. *Foster*, 142 Cal.App.3d at

16    453; *W. States Petroleum Ass'n*, 9 Cal.4th at 578. Where the plaintiff seeks to present additional

17    evidence, even "correspondence to or from various City officials," that "were neither presented

18    to, nor considered by, the city council in its deliberations," the courts exclude it. *Eureka Citizens*

19    *for Responsible Gov't v. City of Eureka*, 147 Cal.App.4th 357, 366 (2007). The courts will only

20    consider extra-record evidence if (1) the evidence in question existed before the agency made its

21    decision, and (2) it was not possible in the exercise of reasonable diligence to present this

22    evidence to the agency before the decision was made so that it could be considered and included

23    in the administrative record." *W. States Petroleum Ass'n*, 9 Cal.4th at 587.[3]

24    [2] California law applies. DA, § 14.11; *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l*
25    *LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011).

26    [3] The record rules apply even if Cal. Code Civ. Proc. § 1094.5 does not. *Id.*; *McGill v.*
*Regents of Univ. of Cal.,* 44 Cal.App.4th 1776, 1783, 1785-86 (1996); *Am. Bd. of Cosmetic*
27    *Surgery, Inc. v. Med. Bd. of Cal.*, 162 Cal.App.4th 534, 547 (2008); *Apple Computer, Inc. v. Cty.*
*of Santa Clara Assessment Appeals Bd.*, 105 Cal.App.4th 1355, 1366 (2003).

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

- 3 -

CITY'S TRIAL BRIEF
NO. 16-CV-7014-VC

OAK #4835-6275-2346 v4

1    These rules reflect the separation of powers doctrine.  "Agencies must weigh the evidence

2    and determine which way the scales tip, while courts conducting substantial evidence ... review

3    generally do not.  If courts were to independently weigh conflicting evidence …, this would []

4    usurp the agency's authority and violate the doctrine of separation of powers."  *W. States*

5    *Petroleum Ass'n*, 9 Cal.4th at 576 (internal quotation marks omitted).

6    The rules of evidence do not apply to a city's administrative proceedings, including public

7    hearings at which evidence was taken so that a city decision-making body may decide the scope

8    of a party's rights under the law.  *Mohilef v. Janovici*, 51 Cal.App.4th 267, 291 (1996).  Rather,

9    procedural informality is the norm.  *Id.*  Hearsay and unsworn testimony are permitted, for

10   example, and a party has no right to cross-examination.  *E.W.A.P., Inc. v. City of Los Angeles*, 56

11   Cal.App.4th 310, 323-34 (1997).  The city's record from the proceedings provides the evidence to

12   be reviewed by the court, whether the court is exercising substantial evidence review as it should

13   here, *see, e.g.*, *Do v. Regents of the Univ. of Cal.*, 216 Cal.App.4th 1474, 1490 (2013), or

14   independent judgment review.  *See, e.g.*, *Cooper v. Kizer*, 230 Cal.App.3d 1291, 1300 (1991).  A

15   *de novo* court trial to review a city's decision regarding a party's rights is improper.  *Id.*

16   Here, during the public hearing process, the City posted on its website all the materials

17   presented by the City and its consultants, OBOT and its consultants and supporters, and members

18   of the public related to this matter, as the Agenda Report for the June 27, 2016 public hearing

19   discussed.  The City produced all these record documents to OBOT during the litigation, along

20   with certified transcripts of the relevant portion of the City Council meetings.  The City will

21   provide the Court with an index of these records, as a trial exhibit, along with a USB-drive with

22   all the documents, as a manual filing (subject to OBOT's objection).

23   The City is separately including on the Exhibit List each of the specific record documents

24   upon which it intends to rely at trial.  However, the City is providing the Court with the record of

25   its proceedings because the Court should have the complete record of the City proceedings, and it

26   is OBOT's burden to prove that the entire record does not include substantial evidence.

27   OBOT seeks to offer extra-record evidence to prove that the City lacked substantial

28   evidence to support its decision to apply the Ordinance to OBOT and the Terminal.  However,

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4835-6275-2346 v4

- 4 -

CITY'S TRIAL BRIEF
NO. 16-CV-7014-VC

1   OBOT chose to disengage from the public hearing process rather than present its own expert

2   analysis.  Meanwhile, the City commissioned consultant reports from ESA and Dr. Chafe and

3   received evidence from interested members of the public, including scientific and health experts,

4   prior to adoption of the Ordinance and Resolution—all presented to the Council for its

5   consideration.  Thus, OBOT has no basis to claim it could not have produced its expert evidence

6   in the exercise of due diligence prior to the City's adoption of the Ordinance and Resolution.

7   Similarly, OBOT is seeking to introduce extra-record evidence such as internal ESA

8   communications.  But OBOT cannot show that these materials were considered by the Council.

9        Accordingly, prior to the introduction of evidence at trial, the City asks the Court to

10  evaluate and rule upon these issues so that the trial, if any, may properly proceed.[4]

11  **B.      The Court Should Allow Open Courtroom Access.**

12       A recurrent theme throughout this litigation has been OBOT's (or aligned entities, like

13  TLS's) over-designation of documents as confidential.  While OBOT has been prodded to reduce

14  confidential designations, at considerable time and expense to Defendants (who have made no

15  such designations), the parties' Exhibit List still contains documents designated as confidential

16  either by OBOT or third parties.  Rather than burdening the Court, parties, and public with a

17  constant opening and closing of the courtroom, Defendants believe the courtroom should remain

18  open for the full duration of trial.  "The Supreme Court has repeatedly held that access to public

19  proceedings and records is an indispensable predicate to free expression about the workings of

20  government."  *Courthouse News Serv. v. Planet*, 750 F.3d 776, 785 (9th Cir. 2014).  Moreover,

21  the presumption in favor of public access is particularly strong in cases like this that involve

22  matters of public concern, like a high-profile health and safety ordinance.  *See, e.g.*, *California ex*

23  *rel. Lockyer v. Safeway, Inc.*, 355 F.Supp.2d 1111, 1124-26 (C.D. Cal. 2005).

24  **C.      Defendants Will Prevail at Trial.**

25       OBOT alleges: (1) breach of the DA, (2) violation of the Commerce Clause (U.S. Const.

26

27  _____

    [4] If the Court ultimately disagrees with the City's position on extra-record evidence, the City
    will be prepared to offer its own extra-record evidence, including expert testimony.

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4835-6275-2346 v4

- 5 -

CITY'S TRIAL BRIEF
NO. 16-CV-7014-VC

art. I, § 8, cl. 3); (3) preemption under (a) the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10501 *et seq.* ("ICCTA"), (b) the Hazardous Materials Transportation Act, 49 U.S.C. § 5101 *et seq.* ("HMTA"), and (c) the Shipping Act, 46 U.S.C. § 40101 *et seq.* OBOT seeks equitable relief, not damages, as OBOT confirmed on the record at the July 12, 2017 CMC.

### 1. The City Did Not Breach the DA.

First, OBOT never acquired a vested right to store or handle coal or coke at the Terminal.

Second, even if the DA provided OBOT a vested right not to be subject to post-DA regulations governing the types of commodities that could be stored and handled at the Terminal, the City properly created an exception to such vested right pursuant to DA section 3.4.2.

Under the substantial evidence test set forth in section 3.4.2, OBOT bears a heavy burden to establish that the City Council lacked any substantial evidence to support application of the Ordinance to OBOT. OBOT expressly agreed to this deferential substantial evidence test in the DA, and the City exercised its contractual rights under the DA. OBOT incorrectly invokes the independent judgment test, but it only applies only when a city abrogates a vested right pursuant to its inherent authority (as opposed to its contractual authority, like here).

Substantial evidence demonstrates that the storage and handling of coal and coke at the Terminal would place "adjacent neighbors, or any portion thereof, or all of them, in a condition substantially dangerous to their health or safety." Even if the Court applied independent judgment or conducted a *do novo* trial, the weight of the evidence will easily sustain the Ordinance and Resolution.

### 2. OBOT Lacks Standing to Assert Its Federal Claims.

OBOT lacks standing to assert its dormant Commerce Clause and preemption claims.

With respect to the dormant Commerce Clause, OBOT simply cannot identify any direct, constitutional injury of its own occasioned by the Ordinance. OBOT is merely a landlord and local real estate developer, and may not assert alleged injuries of third parties.

Lacking its own injury, OBOT points instead to other entities (*i.e.*, TLS, OGRE, and rail carriers) that it alleges will be harmed by the Ordinance. But this tactic fails because "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4835-6275-2346 v4

- 6 -

CITY'S TRIAL BRIEF
NO. 16-CV-7014-VC

1   ground that it may conceivably be applied unconstitutionally to others, in other situations not

2   before the Court." *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973); *accord Warth v. Seldin*,

3   422 U.S. 490, 499 (1975) (plaintiff "cannot rest [its] claim to relief on the legal rights or interests

4   of third parties"). Significantly, OBOT's contractual relationships cannot cure OBOT's standing

5   deficiency because "[a] party may not contract its way into a law's zone of interests if that party

6   does not itself have any protected interests under the law." *Maher Terminals, LLC v. Port Auth.*

7   *of N.Y & N.J.*, 805 F.3d 98, 108 (3d Cir. 2015) (citation omitted). Nor can OBOT rely on its

8   corporate relationships (*i.e.*, with OGRE). *See, e.g.*, *Sec. Indus. & Fin. Mkts. Ass'n v. U.S.*

9   *Commodity Futures Trading Comm'n*, 67 F.Supp.3d 373, 407-08 (D.D.C. 2014) (entity has no

10  standing to sue for "members of its extended corporate family").

11          To take the focus away from its own lack of injury, OBOT apparently has shifted its

12  lawsuit from an "as applied" challenge pertaining to OBOT alone to a "facial" constitutional

13  challenge. *Compare*, *e.g.*, First Amended Complaint, ¶ 131 (Dkt. 74) ("The Ordinance, as

14  applied to the Terminal through the Resolution, imposes burdens on interstate commerce …")

15  *with* OBOT Reply at 7 (Dkt. 182) ("The Ordinance is a direct regulation of interstate and foreign

16  commerce as a matter of law."). But "[s]tyling [their] argument a facial challenge does not

17  change the result" because OBOT lacks standing to assert others' constitutional claims. *Anderson*

18  *v. Holder*, 647 F.3d 1165, 1172 (D.C. Cir. 2011). This attempt to pivot to a facial challenge also

19  means OBOT must "meet a *high burden* of proof [to] 'establish that *no set of circumstances exists*

20  *under which the Ordinance would be valid*. The fact that the Ordinance might operate

21  unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly

22  invalid.'" *S.D. Myers, Inc. v. City & Cnty. of San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001)

23  (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987) (emphasis added)). OBOT cannot

24  meet the burden for either an as applied or facial challenge for the dormant Commerce Clause or

25  federal preemption claims.

26          OBOT's invocation of the alleged dormant Commerce Clause injuries of the rail carriers

27  also fails to confer standing because those injuries simply do not exist. The Ordinance explicitly

28  states that it does not and will not be applied to regulate transport by rail or ship, and OBOT's

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4835-6275-2346 v4

- 7 -

CITY'S TRIAL BRIEF
NO. 16-CV-7014-VC

allegations that the Ordinance impedes rail carriers by forcing them to "conform" cargo or "divert" trains is readily disproven, including by OBOT's own admissions about the non-effect of the Ordinance upon continuing shipments of coal through Oakland by rail.

Regarding preemption, OBOT has failed to show that its complaint falls within the zone of interests protected by each of the three federal laws.  To determine whether a plaintiff comes within the zone of interests of a particular statute, courts must first use "traditional tools of statutory interpretation" to determine the intent of the statute, and must then ask "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1387-90 (2014).

OBOT's interests are outside of the zone of interests protected by each law.  ICCTA's overarching purpose is "regulating the railroad industry."  49 U.S.C. § 10101.  To the best of Defendants' knowledge, every published federal ICCTA decision includes a rail carrier as a party.  Similarly, the HMTA's purpose is to regulate the transportation of hazardous materials.  49 U.S.C. § 5101.  OBOT's interest is in *leasing* a parcel of land to *develop a terminal facility* where commodities would be stored and handled, not in *transporting commodities*.  Finally, the Shipping Act regulates agreements between marine terminal operators or between operators and common carriers.  *See* 46 U.S.C. § 41106(1).  OBOT is neither.  *See Maher Terminals*, 805 F.3d at 108–09 (constitutional shipping provision did not provide standing to landside operations of marine terminal operator since provision protected vessels).[5]

Further, OBOT lacks Article III standing to pursue its ICCTA claim because its alleged injury is not redressable.  Rail carriers would not perform the storage and handling services at the Facility—and certainly would not be doing so as part of their last mile service.  But even if they did, OBOT concedes that these activities would be limited to unloading activities.  If this Court were to declare that ICCTA preempts the Ordinance, the provisions of the Ordinance that regulate

---

[5] OBOT attempts to bolster its own standing by referencing third parties who might themselves fall within the statutory zones of interests.  These efforts fail, for the reasons discussed above, because OBOT "cannot rest [its] claim to relief on the legal rights or interests of third parties."  *Kowalski v. Tesmer*, 543 U.S. 125, 129 (quoting *Warth*, 422 U.S. at 499).

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4835-6275-2346 v4

- 8 -

CITY'S TRIAL BRIEF
NO. 16-CV-7014-VC

1   unloading are severable, if need be.  However, even under a severed version of the Ordinance,

2   OBOT would be prohibited from storing or handling coal at the Terminal.  Consequently, a ruling

3   in OBOT's favor on its ICCTA preemption claim would not redress OBOT's alleged injury.

4   **3.   Application of the Ordinance to OBOT Does Not Violate the Commerce Clause.**

5   Application of the Ordinance to OBOT does not (1)"directly regulate" interstate

6   commerce because it regulates solely conduct in Oakland and not wholly outside the state;

7   (2) "discriminate against interstate commerce" because no local entity that is exempted from the

8   Ordinance competes with either OBOT or any third party; (3) impose an undue burden on

9   interstate commerce because it has not interfered in any way with any railroad operations

10  anywhere in the U.S.; nor (4) impose an undue burden on interstate commerce because existing

11  California port capacity to export coal by ship is significantly greater than even the largest

12  cumulative volume of coal ever exported from those ports.  Moreover, any undue burden would

13  be outweighed by the Ordinance's putative public health and safety benefits.

14  **4.   The Federal Statutes Do Not Preempt Application of the Ordinance to OBOT.**

15  OBOT bears a heavy burden to establish preemption.  Courts presume that a city's

16  exercise of its police powers to protect public health and safety is not preempted and will not

17  entertain a plaintiff's hypothetical conflicts.  Courts also narrowly read local legislation to

18  preserve its constitutionality.

19  **a.   ICCTA Does Not Preempt Application of the Ordinance to OBOT.**

20  OBOT is neither a rail carrier, nor providing services under the auspices of a rail carrier,

21  nor engaged in rail transportation.  In addition, the Ordinance does not regulate rail transportation.

22  It only regulates the storage and handling of coal and coke at the Terminal.  Thus, OBOT cannot

23  prove application of the Ordinance to it or the Terminal is preempted by ICCTA.

24  Further, even if OBOT had standing to assert alleged injuries to a rail carrier or rail

25  transportation (it does not), neither TLS nor OGRE is a rail carrier subject to ICCTA or STB

26  jurisdiction.  Indeed, the purported provider of the "last mile" services to the Terminal, OGRE, is

27  not an STB-licensed rail carrier.  In addition, OGRE is not holding out its "last mile" services to

28  the public and is not providing common carrier services to the West Gateway area.  In addition,

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4835-6275-2346 v4

- 9 -

CITY'S TRIAL BRIEF
NO. 16-CV-7014-VC

1    the final segment of track to the Terminal is not part of the interstate rail network.

2         Thus, the City is not regulating any activity governed by ICCTA.  But if this Court were

3    to hold that the Ordinance must be read to prohibit a rail carrier from unloading coal at the

4    Terminal, the Court should sever the words "unload" and "unloading" from sections 8.60.030(12)

5    and 8.60.040(B)(4), respectively, if performed by a rail carrier.

6              **b.  The HMTA Does Not Preempt the Ordinance.**

7         The HMTA preempts only those laws that impose conflicting shipping requirements on

8    substances expressly designated as "hazardous material" by the Department of Transportation

9    ("DOT").  The DOT has not listed coal or coke as a hazardous substance.  The HMTA thus does

10   not preempt the City from prohibiting the storage and handling of coal and coke at the Terminal.

11   In addition, the prohibition does not conflict with any HMTA provision or DOT regulation.

12             **c.  The Shipping Act Does Not Preempt the Ordinance.**

13        The Shipping Act of 1984 regulates agreements between ocean common carriers and

14   marine terminal operators, with a focus on prohibiting certain discriminatory acts.  Application of

15   the Shipping Act to OBOT is not preempted because OBOT has not shown the existence of any

16   marine terminal operator at the Terminal, and the provision upon which OBOT relies provides

17   that a marine terminal operator cannot *agree with another marine terminal operator or with a*

18   *common carrier* to boycott, or unreasonably discriminate in the provision of terminal services to,

19   a common carrier or ocean tramp."  46 U.S.C. § 41106(1).

20                      **IV.  CONCLUSION**

21        OBOT will not and cannot prove entitlement to any relief.

22   Dated: January 3, 2018                    BURKE, WILLIAMS & SORENSEN, LLP

23

24                                        By: /s/ Kevin D. Siegel
                                              Kevin D. Siegel
25                                            Gregory R. Aker
                                              Timothy A. Colvig
26                                            Christopher M. Long
                                              Attorneys for Defendant
27                                            CITY OF OAKLAND

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
OAKLAND

OAK #4835-6275-2346 v4

- 10 -

CITY'S TRIAL BRIEF
NO. 16-CV-7014-VC